McCOMB v. ROIG.

No. 4439.

United States Court of Appeals
First Circuit.

May 2, 1950.

complaint against a Puerto Rican partnership engaged in the operation of a sugar mill, requires a determination whether certain wage arrangements violated the overtime provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., or were covered by the saving gloss of Walling v. A. H. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The Belo doctrine was adhered to and applied in Walling v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312, contrary to the expectation of some, who thought it was on the way to being overruled. In other cases, involving somewhat different types of wage contracts, the Supreme Court pointed to more or less obvious factual variations to sustain the conclusion that the Belo case was inapplicable. Walling v. Helmerich & Payne, Inc., 1944, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., Inc., 1945, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Walling v. Harnischfeger Corp., 1945, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711; 149 Madison Avenue Corp. v. Asselta, 1947, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432, 169 A.L.R. 1293; Bay Ridge Operating Co., Inc., v. Aaron, 1948, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502. In the Bay Ridge case, just cited, the last word we have had from the Supreme Court on the troublesome problem, it was said that "we have reaffirmed that decision [Belo] as a narrow precedent principally because of public reliance upon and congressional acceptance of the rule there announced. Walling v. Halliburton Oil Well Cementing Co., supra." 334 U.S. at page 462, 68 S.Ct. at page 1195. This perhaps gives a hint to us not to be astute to extend the application of the Belo doctrine. The lower courts, in numerous cases, have been groping their way with difficulty, each case turning pretty much on its particular facts. It would probably be futile, and only add to the confusion, if we should undertake to review and rationalize all the cases; hence we shall try to dispose of this appeal with a minimum of exegesis. Congress has finally, in the 1949 amendments, 63 Stat. 910, supplied more detailed statutory guides in

Bessie Margolin, Assistant Solicitor, Washington, D. C. (William A. Lowe and Joseph D. Mladinov, Attorneys, all three of Washington, D. C., and Kenneth P. Montgomery, Regional Attorney, Santurce, Puerto Rico, with her on brief), for appellant.

James R. Beverley (Jose Lopez Baralt and Carmen B. Hernandez with him on brief), all three of San Juan, Puerto Rico, for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment) and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

An appeal by the Administrator of the Wage and Hour Division, U.S. Department of Labor, from a judgment dismissing a

the Belo and related situations, but these amendments do not control the disposition of the case at bar.

The complaint, filed in the court below November 18, 1947, charged in general terms that the defendant repeatedly, since August 1, 1942, had violated and was violating the provisions of §§ 7 and 15(a)(2) of the Act by employing certain of its employees in the production of goods for interstate commerce for workweeks longer than 40 hours without compensating these employees for such work in excess of 40 hours at rates not less than one and one-half times the regular rates at which they were employed. As the statute read when the complaint was filed, and when the court below rendered judgment, § 7(a) provided as follows: "No employer shall, * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The complaint also charged a violation of record-keeping regulations issued under § 11(c) in that defendant had failed to keep records showing adequately the hours worked each workday and each workweek and the regular rate of pay with respect to certain of its employees; and violation of § 15(a)(1) in that goods produced in violation of the overtime provisions of § 7 were shipped and sold in interstate commerce to points outside Puerto Rico. It was prayed that defendant be enjoined from violating §§ 15(a)(1), 15(a)(2), and 15(a)(5) of the Act.

Defendant's answer denied the allegations generally. The answer also alleged affirmatively that during defendant's grinding season, or "zafra", all of its employees are exempt from the overtime provisions by force of § 7(c), an allegation which the district judge states was conceded by the Administrator; this point is not contested on the present appeal. A stipulation filed in the court below recited that "Defendant contends, and plaintiff does not deny," that certain employees listed therein are exempt from the overtime provisions of § 7 under various provisions of § 13(a) by reason of the nature of their individual jobs.

Therefore, as the issues were shaped in the district court, they required a determination whether the wage arrangements with a total of eight employees complied with the requirements of § 7 during the so-called "dead" season of 31 weeks from June 12, 1947, to January 14, 1948.

It appears from the stipulation that the employees in question "are not represented by any collective bargaining unit and their employment is not governed by any union agreement." They were working under individual letter contracts delivered to each of them in duplicate, one copy being signed by the worker and returned to the company's files, the other copy being retained by the worker. In form, the contracts are of the Belo type; that is, they recite that the employee will be paid at an agreed basic hourly rate (in all cases in excess of the minimum then prescribed by § 6 of the Act), and at not less than one and one-half times the basic hourly rate "for each hour worked after the first forty hours in each week", with the qualification that if on the basis of the foregoing hourly rates the wages paid in any workweek during the dead season do not total a certain fixed sum, then the employer will pay the worker, at the end of the week, a "bonus" in an amount sufficient to make up the guaranteed sum.

Under the particular facts of the Belo case, the Supreme Court held that the hourly rate expressed in the contract was the "regular rate" within the meaning of § 7. But the Belo opinion, and the Halliburton case which followed it, as well as the cases in which Belo was distinguished, all recognized that the contract stipulation of a purported hourly rate does not necessarily preclude computation of the "regular rate" by the method approved in Overnight Motor Transportation Co., Inc., v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, namely, by dividing the amount actually paid per week by the

number of hours worked in that week. The stipulated hourly rate must not be a fictitious one. There must be such reasonable relation between the stated hourly rate and the guaranteed weekly sum, so that in any week in which the employee worked hours in excess of 40, but not enough to exceed the weekly guaranty, the parties may fairly be deemed to have contemplated that the guaranteed weekly payment embraced two factors, (1) a sum equal to 40 hours of employment at the basic hourly rate, and (2) the balance, regarded as the equivalent of not less than one and one-half times the basic hourly rate for each hour worked in excess of 40. See the Belo opinion, 316 U.S. at page 632, 62 S.Ct. at page 1227, 86 L.Ed. 1716. But no reasonable relation can be said to exist between the stated hourly rate and the weekly guaranty if the two, when there is variation in pay from worker to worker, do not vary together. Thus it is a clear indication that a stated hourly rate is wholly artificial if there are increases in weekly guaranties while hourly rates remain unchanged. See McComb v. Sterling Ice & Cold Storage Co., 10 Cir., 1947, 165 F.2d 265, 270. In that case a contract in form patterned after the Belo arrangement was held unavailing to avoid the rule for computation of the "regular rate" prescribed in Overnight Motor Transportation Co., Inc., v. Missel, supra. The court, 165 F.2d at page 269, laid down the following, with which we agree:

"From an analysis of these cases, we conclude that the correct rule to apply is that where employees work irregular hours under a contract fixing a regular hourly rate and providing time and one-half for overtime and also for a weekly guarantee, the hourly rate must have been intended to determine the weekly wages which it was contemplated would be paid for both regular and for overtime work, at not less than one and one-half times the amount thereof; and that the weekly guarantee must be such a sum as the parties contemplated would ordinarily result from the application of the hourly rate to the regular and overtime hours, taking into consideration that the hours of work were not fixed and that they varied somewhat from week to week. If the hourly rate fixed in the contract was such that it did not reasonably determine the weekly wages intended to be paid to the employees, according to the nature of their employment, for both regular hours and one and one-half times such hourly rate for the overtime hours for such hours as they would ordinarily work, it would be a fictitious rate. In such a case, the weekly guarantee would constitute the real wage and would be used in computing and determining the hourly rate."

Of course an employer in undertaking to set up a Belo arrangement would not necessarily be expected to pay all the workers even in a given type of job the same weekly wage. There might naturally be differentials based on seniority, for example. But it cannot be said that the hourly rate is real if such differentials are reflected only in the weekly guaranty, and not in the hourly rates. If a reasonable relation is to be found to exist between hourly rates and weekly guaranties, two variables, such relation must be with reference to some constant. Typically, that constant would be the number of hours all workers in a class or classes covered by the plan would have to work per week before they could each exceed whatever their particular guaranty might be at their particular hourly rate. That number of hours, in turn, if the workers are ever in fact to take home more than their weekly guaranty, would correspond to something like the average number of hours the employer expects them to work per week. Thus in the Belo case itself, if an employee received an increase in pay, appropriate adjustment was made in both the stated hourly rates and the guaranteed weekly sum. Yet it appears from the opinion that the employees generally, no matter what their weekly guaranties, had to work 54½ hours a week before they could exceed their respective guaranties, since the stated hourly rate was fixed at one-sixtieth of the guaranteed weekly wage. 316 U.S. at page 628-629, 62 S.Ct. at pages 1225, 1226, 86 L.Ed. 1716.

It is possible, of course, that the relation between the hourly rate and the guaranty

might be set by the employer with reference not to a roughly estimated average workweek but to what the employer supposes would be the maximum possible workweek. In such a case, if the employer's forecast proved accurate, the workers would never exceed their guaranties; the purported hourly rate would never control the amount of the weekly pay and would pretty surely be found to be fictitious. Conversely, it is possible that an employer might set purported hourly rates haphazardly in their relation to the guaranties without reference to any estimated workweek; in such case, though some workers might upon occasion work long enough in a given week to exceed their weekly guaranties, nevertheless because of the obvious artificiality of the so-called hourly rates they would not be deemed to establish the "regular rate" within the meaning of § 7. Such in fact is the situation in the case at bar.

The eight employees here in question were all listed on the company's records as working at a contract hourly rate of 47 cents, without regard to the kind of job—whether clerk, telephone operator, storekeeper, minor surgeon, or mechanic. Yet their weekly guaranties varied from $24.44 to $40.00. It might be suggested that there were really eight separate arrangements of the Belo type tailored to fit each of these eight employees rather than one arrangement for the group, and that for each employee the varying weekly guaranties were related to the same 47-cent hourly rate with reference to the different average workweeks expected of each of them. But the facts belie any such suggestion. For if that were so, one would expect two workers such as Davila and Rodriguez, both listed as clerks, who worked, as the record shows, quite nearly the same average week, to receive approximately the same guaranty, since they are supposedly paid at the same hourly rate. But Rodriguez's guaranty was $37.00, while Davila's was only $30.00 a week, and indeed, from the fact that Davila's average workweek exceeded Rodriguez's somewhat, it would logically be expected that Davila's weekly guaranty would be higher than that of Rodriguez. In view of the absence of a reasonable relation either on an individual or on a group basis between the weekly guaranties and the hourly rates of the eight workers here in question, the conclusion is evident that the latter are artificial contrivances and do not really set the "regular rate" at which the workers are employed. Stated in another way, it may be said that there are three crucial figures in a Belo-type arrangement: the hourly rate, the weekly guaranty, and the number of hours which have to be worked per week before the guaranty can be exceeded. The first two may be variables, but if they bear a rational relationship one to the other, the third factor is a constant. In the plan before us it is the hourly rate which is the constant; the other two figures are variable. For that reason the plan fails even though it is true that four of the eight workers involved, at times, though not often, took home more than their weekly guaranties.

Only a word need be said about the Administrator's prayer for an injunction against violation of the record-keeping regulation. 29 C.F.R.Cum.Supp. §§ 516.2(6)(i). The defendant concedes that there have been such violations in not properly recording the "regular rate" of pay if the stated contract rate of 47 cents an hour is held not to be the "regular rate". We have so held. The Administrator was entitled to injunctive relief.

The decree of the District Court is vacated and the case remanded for further proceedings not inconsistent with this opinion.