James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

BRANDTJEN & KLUGE, Incorporated, Defendant.

Civ. A. No. 53–1119.

United States District Court, D. Massachusetts.

March 21, 1955.

---

Harry A. Tuell, Albert H. Ross, Boston, Mass., Thomas L. Thistle, Reg. Atty. U. S. Dept. of Labor, Boston, Mass., for plaintiff.

David W. Kelley, Paul R. Frederick, Badger, Pratt, Doyle & Badger, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This action for an injunction has been instituted by the Secretary of Labor to prevent the defendant from compensating certain of its employees in accordance with wage agreements which the Secretary alleges violate the overtime provisions of Section 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 207. The defendant's answer denies any violation of the Act and asserts that it is now and has at all times been in full compliance with said Act.

### Findings of Fact

The case has been submitted by the parties on the pleadings and briefs, along with a stipulation of facts which the court adopts as its finding of facts.

The defendant, Brandtjen & Kluge, Incorporated, is a Minnesota corporation engaged in the manufacture, sale, distribution and installation of printing presses and parts and equipment used in connection with the presses. It does business throughout the continental United States, and maintains branch offices in eleven different cities and states. The defendant generally employs one or more persons known as "erectors" in each of its branch offices. Their general duties are to install printing presses and feeders and to service and repair such machines. The erectors work out of the office to which they are assigned, and in the fulfillment of their duties may, and frequently do travel from state to state. They perform work which is independent of close and immediate supervision, the defendant relying in a large measure on each erector's judgment in carrying out his duties. Due to an irregular demand for their services, the hours worked by the erectors during a workweek vary from week to week and from erector to erector. Weekly payroll transcripts introduced in evidence show the extent of this variation, which runs from a single workweek of eight hours in the case of one erector, as a low, to a single workweek of seventy-five hours in the case of another erector, as a high.

During the period from August 1, 1950 to September 6, 1953, the defendant employed from eight to seventeen erectors who were stationed at the various field offices. Each of the erectors is employed under a standard employment contract, the provisions of which are uniform except that the compensation provided for may vary depending upon the experience, skill, longevity and other qualities of the individual erectors. When an erector is granted an increase in compensation, a new contract is issued and forwarded to the erector for his signature. The employment contracts specify an hourly rate of at least seventy-five cents (the statutory minimum) for the first forty hours in any workweek, and compensation at one and one-half times said rate for hours worked in excess of forty, and in addition guarantee a designated weekly amount equivalent to a workweek of forty-eight hours with overtime for hours over forty computed therein.

Under this type of wage contract, commonly referred to as a "Belo" type agreement, the employee is paid the guaranteed sum even in workweeks in which he works substantially less than forty-eight hours. Also, when and if an erector works more than forty-eight hours during a workweek, he is compensated for the excess at one and one-half times his stated hourly rate and receives this sum in addition to the amount of the weekly guarantee.

The payroll records of the defendant show that fourteen of the seventeen erectors involved in the case have exceeded the maximum guaranteed hours of the employment contracts at least once during the period from August 1, 1950 to Sept. 6, 1953. The number of workweeks in which these erectors worked in excess of the forty-eight hours runs from one in the case of six of the erectors, to sixteen in the case of one erector. The average workweek of the erectors, however, was well below the forty-eight hours guaranteed in the contracts.

The plaintiff takes the position that the method of payment utilized by the defendant, when read in the light of the employment conditions which actually obtain among the erectors, fails to satisfy the requirements of the Fair Labor Standards Act. The defendant contends that its method of payment under the employment contracts is in full compliance with the Act. Accordingly, the defendant continues up to the present time to compensate its employees under this wage plan.

The disposition of the case at bar is controlled by what the Court of Appeals for this circuit referred to in McComb v. Roig, 1 Cir., 181 F.2d 726, 727, as the "more detailed statutory guides in the Belo and related situations"—"supplied by Congress in the 1949 Amendments" to the Fair Labor Standards Act.

This was not so in the Roig case, which is the latest decision in this circuit to pass upon the legality of weekly guarantee wage plans.

Section 7(e), the pertinent section of the 1949 Amendment, reads:

"No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in Section 6(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rate so specified."

In this case the wage plan employed by the defendant clearly complies with the provisions of Section 7(e) in the following respects: the employment contracts specify as a regular rate of pay an hourly sum which in each case is at or above the minimum prescribed by the Act; compensation at not less than one and one-half times the hourly rate is provided for all hours worked in excess of forty in any workweek; and a weekly guarantee of pay is also provided for at not more than sixty hours based on the rate specified. In this case the guarantee is for forty-eight hours of work.

There does not seem to be any dispute either as to the fact that the employees are employed pursuant to bona fide individual contracts. In any case, I find this to be the fact. I also find from the evidence in the case that the duties of the erectors necessitate irregular hours of work. This fact is apparent from but a cursory examination of the payroll records of the employees. Thus the wage contracts in this case comply in all respects with the express provisions of Section 7(e), supra, and for this reason should be sustained by this Court.

Ordinarily we would feel content in resting our decision on this showing of full compliance with the statute as drawn, since on its face it seems to be definite and exact in spelling out its qualifications for an exemption from certain over-time provisions of the Fair Labor Standards Act. However, in view of much judicial opinion to the effect that Section 7(e) is merely a codification of Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and the plaintiff's insistence that so considered there are additional requirements contained in that decision which must be met before a wage plan such as here can be considered valid, we will go back of the statute briefly to consider the plaintiff's main contention.

The plaintiff urges that a determining factor in the Belo and other decisions on this question was the fact that the regular rate was operative in a substantial or significant number of workweeks in the sense that on these occasions it controlled and determined the compensation received by the employees. This came about because the employees frequently exceeded their weekly guarantee, which was initially set by the employer at a point where it has some relation to the average or usual workweek of the employees. Since the erectors only infrequently exceeded their guaranteed weekly hours in the present case, argues the plaintiff, the regular rate of pay stipulated in their contracts is artificial or fictitious. In Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312, when the plaintiff pointed out that the guaranteed number of hours bore no relation to the usual workweek, the court answered that the employees in that case actually had no usual workweek. It went on further to stress the facts that in the Belo case, the average workweek was substantially less that 54½ hours and that the employees exceeded their guarantee in considerably less than 20% of the weeks worked. This problem was discussed by the court in McComb v. Roig, supra, 181 F.2d at pages 729–730, where it says,

"It is possible, of course, that the relation between the hourly rate and the guaranty might be set by the employer with reference not to a roughly estimated average workweek but to what the employer supposes would be the maximum possible workweek. In such a case, if the employer's forecast proved accurate, the workers would never exceed their guaranties; the purported hourly rate would never control the amount of the weekly pay and would pretty surely be found to be fictitious."

I don't believe the facts of the instant case come within this statement by the Court of Appeals. The evidence here does not require the conclusion that the defendant set the guaranteed workweek at a point he supposed would be the maximum possible workweek. In all other respects the wage plans adopted by the defendant comply with the requirements enunciated in the Roig case. There is such a relation between the stated hourly rate and the guaranteed weekly sum that in any week in which the employee worked hours in excess of forty, but not enough to exceed the guarantee, the parties may fairly be deemed to have contemplated that the guaranteed weekly payment embraced two factors: (1) a sum equal to forty hours of employment at the basic hourly rate, and (2) the balance regarded as the equivalent of not less than one and one-half times the basic hourly rate for each hour worked in excess of forty. See McComb v. Roig supra, 181 F.2d at page 729.

In the present case, the additional facts that each time an employee was given a raise, corresponding adjustments were made in both his hourly rate and weekly guarantee; and that on those occasions when he worked in excess of the weekly guarantee, he was compensated at time and one-half the specified rate for hours in excess of the guarantee, show that the parties actually attached significance to the stipulated hourly rate. On the facts of this case such stipulated hourly rate is the "regular rate" within the principles laid down in the Belo, Halliburton, and Roig decisions.

### Ruling of Law

From the foregoing I conclude and rule that the wage agreements adopted by the defendant conforms both to Section 7(e) of the Fair Labor Standards Act and the earlier decisions of the courts passing on the validity of weekly guarantee wage plans.

The complaint is dismissed as the evidence does not warrant a finding that the defendant has violated the provisions of Section 7 of the Act.