## WALLING, WAGE AND HOUR ADMINISTRATOR, *v.* HALLIBURTON OIL WELL CEMENTING CO.

No. 74.   Argued February 7, 10, 1947.—Decided April 14, 1947.

18

*Morton Liftin* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Arnold Raum, William S. Tyson* and *Joseph M. Stone.*

*Ben F. Saye* and *Paul Sandmeyer* argued the cause for respondent. With them on the brief was *Gurney E. Newlin. Harry C. Robb* entered an appearance for respondent.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

This case brings here a question as to the application of the overtime provisions of the Fair Labor Standards Act [1] to the payment of compensation pursuant to employment contracts similar to those in *Walling* v. *Belo Corp.,* 316 U. S. 624.

Respondent is engaged in the business of cementing, testing and otherwise servicing oil wells, for which it uses its own peculiar equipment. To operate this equipment respondent retains a highly stabilized group of skilled and specially trained "field employees." The volume of respondent's business, however, is highly inconstant.

---

[1] 52 Stat. 1060, 29 U. S. C. § 201 *et seq.* The relevant overtime provisions, contained in § 7 (a), 29 U. S. C. § 207 (a), are as follows:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

.         .         .         .         .

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Consequently, these employees are required to work a variable number of hours from day to day and from week to week.

Prior to passage of the Act in 1938, these employees were paid fixed monthly salaries. Thereafter, they were put on a "weekly-guarantee" plan similar to that which was to be involved in the *Belo* case. This plan was abandoned March 1, 1942, under pressure from the Administrator of the Act, and reinstated July 1, 1942, after the *Belo* decision had seemed to end all questions as to its legality.[2] Since its reinstatement the plan has been continuously in effect, and embodied in formal written contracts between respondent and the employees to whom it has applied.

The part of these contracts now in issue is respondent's agreement to pay these employees "a regular basic rate of [a specified number of] cents per hour for the first (40) hours of any workweek, and not less than one and one-half times such basic hourly rate of pay for all time over (40) hours in any workweek, with a guarantee that Employee shall receive for regular time and for such overtime as the necessities of the business may demand a sum not less than $ [a specified number] for each workweek." [3]

The regular basic rate so specified was in each case at or above the minimum prescribed by the Act or by the Administrator's order, but that rate was always so related to the guaranteed flat sum that the employee became entitled to more than the guarantee only in weeks in which he worked more than 84 hours.[4] The compensation

---

[2] This Court decided the *Belo* case June 8, 1942.

[3] Compare the almost identical wording of the *Belo* contract, 316 U. S. at 628.

[4] For instance, the lowest specified basic rate in May, 1944, when this case was tried, was 40 cents an hour. Compensation at this rate for 40 hours and at one and one-half this rate for 44 additional hours equals $42.40. Actually, the correlative weekly guarantee was the slightly greater sum of $42.69.

actually paid was regularly consistent with the contractual obligation as stated.

Petitioner sued respondent under § 17 of the Act to enjoin against future adherence to this plan, on the ground that it failed to include overtime compensation as required by § 7 (a). He contended that the actual "regular rate" of compensation payable under these contracts was not the specified basic rate, but rather the quotient of the amount of the correlative guarantee divided by the number of hours worked in that week. This was said to follow from the fact that the employees usually worked less than 84 hours a week and nevertheless received the full guaranteed sum.

The District Court found, however, that the contracts were "bona fide," and that they were "intended to and did really fix the regular rate" at which the men were employed. It denied relief [5] and the Circuit Court of Appeals affirmed,[6] both Courts relying on our decision in the *Belo* case.

Petitioner admits a close similarity of facts and of his basic contentions in this and the *Belo* case. He argues, however, that the *Belo* decision should not be followed: (a) because there are factual differences between the two cases adequate to distinguish them, (b) because *Belo* has been implicitly overruled by later decisions of this Court, and (c) because the *Belo* decision is erroneous.

As to the first of these arguments, we note that the contracts in *Belo* and in this case are substantially identical, except for the amount of the hourly rate and of the fixed guarantee. Under the *Belo* contract, however, overtime would be paid in addition to the guaranteed wage after $54\frac{1}{2}$ hours had been worked in any given week; [7] under

---

[5] 57 F. Supp. 408.

[6] 152 F. 2d 622.

[7] See the statement and explanation of the *Belo* contract, 316 U. S. at 627–629.

this contract, only after 84 hours. It is said that this 84 hours bears no relation to the usual workweek.

Actually, the employees in this case have no usual work-week. In many weeks they work more than 100 hours; in others less than 30. In about 20 per cent of the work-weeks, they work in excess of 84 hours.[8] Whenever they do, they are paid in accordance with the contract on the basis of the specified hourly rate with appropriate over-time.

No more can be said as to the relation between 54½ hours and the usual workweek in *Belo*. It appears from the record in that case that the employees there involved also worked fluctuating workweeks, and that the average workweek was substantially less than 54½ hours. Indeed, it appears that the *Belo* employees exceeded 54½ hours in considerably less than 20 per cent of the weeks worked.[9] When they did so, they too were paid at the contractual rate with appropriate overtime.[10] There is nothing here to suggest different treatment of the two cases.

Petitioner also points to alleged differences in the fact that respondent in this case paid the full weekly guaran-

---

[8] The record shows that of 4,284 man-weeks worked by respondent's California field employees between July 5, 1942, and March 11, 1944, about 3% were less than 20 hours in length, about 13% were less than 40 hours, about 67% were from 40 to 84 hours, about 20% were over 84 hours, and about 7% over 104 hours, some running as high as 140 and 150 hours. This "work-week" was the basis for deter-mining compensation, but it did not represent the number of hours actually worked by the employee. In the course of typical cementing and testing operations, many hours counted as working time were spent waiting while the drilling crew was running the casing, the cement was setting, the perforation work was being done by another company, or the testing tool was standing in the well hole.

[9] See Transcript of Record, Supreme Court of the United States, *Walling* v. *A. H. Belo Corp.*, No. 622, O. T. 1941, pp. 194–337.

[10] 316 U. S. at 631–632.

tee even when its employees worked less than 40 hours in the week, and the fact that respondent carried fixed rather than fluctuating overtime rates on its payroll records.

As to the first of these points, there is actually no difference between this case and *Belo*. The employees in both cases had a contractual right to the full guarantee however short their workweek, and those in *Belo* were paid it as well as those here.[11] The second fact we think without significance. The function of the payroll records was merely to show the amounts of compensation payable. These records did not affect respondent's contract obligations, nor suggest a practice at variance with the contract.

We think that whatever differences exist between this case and *Belo* are without substance, and that it must either be followed or overruled.

This brings us to petitioner's second argument, in which our attention is directed to three cases decided since *Belo,* wherein we held that certain plans of overtime compensation failed to meet the § 7 (a) requirement. It is urged that the provisions for overtime compensation in these cases were legally no less adequate than, and that the principles on which they were decided are necessarily inconsistent with, the overtime provision and the principles of the *Belo* case.

In *Belo* itself, the specified basic hourly rate was held to be the actual regular rate because, as to weeks in which employees worked more than 54½ hours, the specified rate determined the amount of compensation actually payable; as to weeks in which they worked less, the Court inferred from the collateral specification of a basic rate and provision for a legal but variable rate of overtime pay that the guaranteed flat sum then due also contemplated

---

[11] *Fleming* v. *A. H. Belo Corp.*, 121 F. 2d 207, at 210, note 6.

both basic pay and overtime.[12]   On the other hand, we find that in the three later cases relied on by petitioner, the agreed method by which wages were computed made a like inference impossible.

In *Walling* v. *Helmerich & Payne, Inc.*, 323 U. S. 37, we considered a "split-day plan," under which a prescribed "regular" hourly rate was payable for the first four hours of each eight-hour shift, and a prescribed "overtime" rate, of one and one-half the "regular" rate, was payable for the other four hours.[13]   In those weeks in which an employee worked statutory overtime, he was paid at the contract "overtime" rate for many straight-time hours and at the contract "regular" rate for many overtime hours.   Obviously, these prescribed rates were not actual regular and overtime rates, although so named in the plan. Consequently, as in *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, we held that the regular rate was to be determined by dividing the wages actually paid by the hours actually worked.   In so deciding, we expressly noted that *Belo* was not controlling because the wage plans involved in the two cases posed entirely different questions as to the application of § 7 (a).[14]

---

[12] 316 U. S. at 631–632.   In *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, decided the same day as *Belo,* the employees also worked an irregular number of hours each week, but were simply paid a fixed weekly wage.   The Court noted the absence of any agreement between the contracting parties for the payment of a specified rate and overtime, and of any contractual limitation on the number of hours the employee could be required to work for the fixed wage.   It also noted that these factors were not absent from the *Belo* plan.   See 316 U. S. at 581.

[13] Theoretically, when an employee had so accumulated 40 "regular" hours in one week, all subsequent hours were compensable as "overtime."   Actually, no employee ever did so.   See 323 U. S. at 41.

[14] "Nothing in this Court's decision in *Walling* v. *Belo Corp., supra,* sanctions the use of the split-day plan.   The controversy there cen-

In *Walling* v. *Youngerman-Reynolds Hardwood Co.*, 325 U. S. 419, and *Walling* v. *Harnischfeger Corp.*, 325 U. S. 427, the contracts established two alternative methods for computing each employee's wages. One was to multiply his straight-time hours of work by a specified basic hourly rate, and his overtime hours by one and one-half that rate, and add the products. The other was to multiply the number of jobs done by a specified piecework rate. The employee was entitled to be paid the greater of these two sums.[15] The method of computing the amount due at piecework rates, which were constant for work done on both straight-time and overtime hours, of course negated any possible inference that the payment of such amount contemplated legal overtime compensation. The specified hourly rates were so low, however, relative to piecework rates, that the latter were always, or almost always, determinative of the wage actually to be paid. These cases held merely that such specified hourly rates were not the "regular" rates of wage payments to which they were not related, and which were

---

tered about the question whether the regular rate should be computed from the guaranteed weekly wage or whether it should be identical with the hourly rate set forth in the employment contract. There was no question, as here, pertaining to the applicability of the regular rate to the first 40 hours actually and regularly worked, with the overtime rate applying to all hours worked in excess thereof." *Walling* v. *Helmerich & Payne, Inc.*, 323 U. S. 37, at 42.

[15] In the *Harnischfeger* case, the scheme was actually a little different from that in the *Youngerman-Reynolds* case, which is stated in the text. In *Harnischfeger*, the employee was credited with (a) the product of the total number of hours worked multiplied by the basic rate, plus (b) the amount by which piecework earnings during all hours worked exceeded the product in (a), plus (c) the product of the number of overtime hours worked multiplied by one-half the basic hourly rate. The difference is that in *Harnischfeger* some provision was made for overtime; but in both cases the provision for overtime was inadequate, and for the same reason. See 325 U. S. at 431–432.

computed according to a necessarily inconsistent method. Again, *Belo* was expressly distinguished.[16]

Indeed, it would seem that the Court's opinions in these cases, far from undermining *Belo,* showed an affirmative concern that language appropriate to the situations then before us should not be extended to the different situation involved in this and the *Belo* case.

Finally, petitioner maintains that *Belo* was wrongly decided and that we should "define the area of [its] continued vitality, if any." His argument on this score is substantially the same as that advanced on behalf of the Administrator and considered by the Court in the *Belo* case itself.

The reasons stated in the *Belo* opinion for rejecting this argument are equally valid today, and need not be repeated. Moreover, our holding in *Belo* has been a rule of decision in this Court for five years, and recognized as such on each appropriate occasion. Knowing of the *Belo* decision, the Congress has permitted § 7 (a) to stand unmodified and the courts have applied it as so construed. Employers and employees (including those involved in this case) have regulated their affairs on the faith of it.

[16] "This Court's decision in *Walling* v. *Belo Corp.,* 316 U. S. 624, lends no support to respondent's position. The particular wage agreements there involved were upheld because it was felt that in fixing a rate of 67 cents an hour the contracts did in fact set the actual regular rate at which the workers were employed. The case is no authority, however, for the proposition that the regular rate may be fixed by contract at a point completely unrelated to the payments actually and normally received each week by the employees." *Walling* v. *Youngerman-Reynolds Hardwood Co.,* 325 U. S. 419, at 426.

See also the concurring opinion of MR. JUSTICE FRANKFURTER in *Walling* v. *Harnischfeger Corp.,* 325 U. S. 427, 433. The Court did not expressly refer to *Belo* in its opinion in the *Harnischfeger* case; but, as it did in *Youngerman-Reynolds,* which involves substantially the same question and was decided the same day, we consider that further reference to *Belo* would have been redundant.

26

Even if we doubted the wisdom of the *Belo* decision as an original proposition, we should not be inclined to depart from it at this time.

*Affirmed.*

Mr. Justice Rutledge.

I concur in the Court's judgment upon the authority of *Walling* v. *Belo Corp.*, 316 U. S. 624. I agree with Mr. Justice Murphy that the *Belo* decision is inconsistent with later decisions here, in the view it takes concerning the legal effects of the Fair Labor Standards Act. But those cases are distinguishable upon their facts; the *Belo* case has been relied upon by the parties to this cause and no doubt also by others, in making their arrangements; and the facts here seem to me indistinguishable from those covered by the *Belo* decision. Accordingly, although I would restrict the effects of that decision narrowly to the factual situation presented, I join in the judgment now rendered.

Mr. Justice Murphy, with whom Mr. Justice Black concurs, dissenting.

It is conceded that the weekly guaranty was sufficient to pay for 40 hours at the so-called "regular basic rate" and for 44 additional hours at one and one-half times such "basic hourly rate." The contract overtime rate became effective only as to those hours of work in excess of 84. In other words, the "regular basic rate" referred to in the contracts had no meaning or effect whatsoever unless the employee worked more than 84 hours in a week. Whether he worked 20 hours, 40 hours or 60 hours in a week, he was paid the guaranteed amount.

To square such a wage scheme with the plain requirements of § 7 (a) of the Fair Labor Standards Act of 1938 is impossible. Time and again this Court has made it clear that the regular rate of compensation upon which

overtime payments are to be based is the hourly rate actually paid to the employee for the normal, non-overtime workweek for which he is employed. *Overnight Motor Co.* v. *Missel*, 316 U. S. 572, 580; *Walling* v. *Helmerich & Payne*, 323 U. S. 37, 40; *United States* v. *Rosenwasser*, 323 U. S. 360, 363; *Walling* v. *Youngerman-Reynolds Hardwood Co.*, 325 U. S. 419, 424; *Walling* v. *Harnischfeger Corp.*, 325 U. S. 427, 430. "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." *Walling* v. *Youngerman-Reynolds Hardwood Co., supra,* 424–425.

Our attention in this case must therefore be focused upon the actual payments, exclusive of those paid for overtime, which the parties have agreed shall be paid during each workweek. And when we do that, we discover that the parties have agreed that the employees shall receive the guaranteed amount, not the so-called "regular basic rate." That guaranteed amount is thus the regular rate for purposes of § 7 (a) of the Act, the so-called "regular basic rate" being an obviously artificial one.

It is said, however, that this scheme is sanctioned by *Walling* v. *Belo Corp.*, 316 U. S. 624. That is true, but it does not justify continuance of the erroneous *Belo* doctrine. The *Belo* case has been distinguished in subsequent opinions of this Court, but the distinctions were essentially ones of fact. On the basis of legal and statutory theory, the *Belo* case is irreconcilable with the later

28

cases. The *Belo* case, which carries its own refutation in its dissenting opinion, should therefore be overruled. Otherwise we shall be perpetuating and augmenting the unrealities and confusion which have marked the application of the doctrine of that case. See Feldman, "Algebra and the Supreme Court," 40 Ill. L. Rev. 489; "Legality of Wage Readjustment Plans under the Overtime Provision of the Fair Labor Standards Act," 13 U. of Chi. L. Rev. 486; 44 Mich. L. Rev. 866.