McCOMB v. LA CASA DEL TRANS-
PORTE, Inc., et al.
No. 4299.

Circuit Court of Appeals, First Circuit.
April 9, 1948.

Frederick U. Reel, Attorney, Department of Labor, of Washington, D. C. (William S. Tyson, Solicitor and Bessie Margolin, Asst. Solicitor, both of Washington, D. C., and Alejandro Romanace, Attorney, Department of Labor, and Kenneth P. Montgomery, Regional Attorney, both of San Juan, Puerto Rico, on the brief), for appellant.

No appearance for appellees.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Pursuant to § 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S.C.A. § 217, the Administrator of the Wage and Hour Division, United States Department of Labor, on June 27, 1946, filed a complaint in the court below charging defendants with violations of § 6 of the Act, 29 U.S.C.A. § 206 (prescribing minimum wages),* violations of § 7, 29 U.S.C.

---

* On this appeal the Administrator no longer contends that defendants had been violating § 6 of the Act.

A. § 207 (prescribing overtime compensation), and violations of § 11(c), 29 U.S.C.A. § 211(c), by failure to keep records as prescribed by regulation. A permanent injunction against further violations was sought. Joined as defendants were La Casa del Transporte, Inc., and Francisco Vega Otero individually and as president and general manager of the corporate defendant. It appears from the record that the corporation was organized in July, 1943, and continued thereafter for a period of three years to operate a trucking business, after which it ceased to do business and the enterprise was taken over by the said Francisco Vega Otero on his individual account.

After a trial, the district court filed its findings of fact and conclusions of law. It found that the corporate defendant was engaged as a common carrier in the transportation of goods in interstate commerce, hauling sugar and molasses between several centrals and San Juan, Puerto Rico, and between San Juan and Caguas and Cayey. It found further that the corporation had kept adequate records; that it had paid its employees both the minimum wages and the overtime compensation required by the Act; and that the defendants had no intention of violating the Act in the future nor had they intentionally violated it in the past. As a conclusion of law the court ruled that the plaintiff was not entitled to the equitable relief sought and accordingly the complaint was dismissed. The Administrator appealed.

Ever since July 15, 1943, there has been in effect an agreement between the employer and the truck drivers and helpers under which wage payments are determined. The agreement states that the employees are to receive specified "basic wages" per hour, with hours in excess of forty hours per week to be compensated at one and one-half times the basic wage. At the same time, an agreed schedule has been in effect under which the drivers and helpers are assigned a specific commission for each of a large number of trips, and to each trip is allotted the "average hours" the particular trip is supposed to take. Thus, a trip from Caguas to San Juan with 100 bags of sugar at 250 lbs. each, and return loaded, is supposed to take six and one-half hours, and the

driver's trip commission is $5.00, which is better than the driver's "basic wage" of 50 cents an hour for the assumed six and one-half hours. The same trip with return empty is supposed to take only four and one-half hours, and for this the driver's trip commission is $2.25, which happens to be at the rate of 50 cents per hour for the assumed four and one-half hours. In some of the described trips, where the truck is empty either going or coming, the trip commission for a truck driver amounts to somewhat less than 50 cents per hour for the assumed time of the trip. At the end of the workweek, the trip commissions for all the trips made by the employee during that week are added up, together with the assumed number of hours the employee worked, as taken from the predetermined schedule of "average hours" for the various trips. This sum of the employee's trip commissions for the week becomes his wage for that week unless, as occasionally might happen, a larger sum is arrived at by applying the employee's "basic wage" per hour to the assumed number of hours worked during the week, with time and a half for overtime, in which case the larger sum becomes the wage for the week.

■ The evidence is clear that the employer has not kept records of the actual time consumed by the truck drivers on the various trips, but has recorded merely the "average hours" the respective trips were supposed to consume, as set forth in the published schedule. It is also in evidence that the estimated hours, or "average hours", recorded on the payroll were frequently less than the actual hours worked, as where a truck would be delayed waiting its turn at dock. The applicable regulation (Code Fed.Reg., 1941 Supp., Tit. 29, C.V., pt. 516, § 516.2(a) (7), 6 F.R. 4694) requires the employment records to show "hours worked each work day and total hours worked each work week." It is clear that the employer has consistently violated, and at the time of the trial was continuing to violate, the record-keeping regulation. Walling v. Panther Creek Mines, Inc., 7 Cir., 1945, 148 F.2d 604.

■ The finding that the employer has complied with the requirements of § 7 of the Act as to overtime compensation must

likewise be held to be "clearly erroneous". The method of computation applied by the employer (as to which there is no dispute in the evidence) is not in compliance with § 7(a), which requires compensation to be paid to the employee for hours worked in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." The basic hourly rate of pay as stated in the contract is not actually the "regular rate", for only infrequently could this rate be controlling in arriving at the employee's weekly wage. Of the typical instances set forth in the record, there is not a single one in which the weekly straight-time earnings, computed by applying the contract hourly rate to the assumed (not actual) number of hours worked, exceeded the weekly aggregate of the guaranteed trip commissions. The trip commissions are equivalent to payments on a piecework basis. To find the "regular rate" of pay of an employee on a piecework basis, for the purpose of applying § 7 of the Act, it is necessary to translate the employee's weekly wage, on a piecework basis, into an hourly rate. United States v. Rosenwasser, 1945, 323 U.S. 360, 364, 65 S.Ct. 295, 89 L.Ed. 301. This rate is arrived at by dividing the amount received during the week by the number of hours actually worked. Walling v. Youngerman-Reynolds Hardwood Co., Inc., 1945, 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705. See Overnight Motor Transportation Co., Inc. v. Missel, 1942, 316 U.S. 572, 579-580, 62 S.Ct. 1216, 86 L.Ed. 1682. In most instances, in the case at bar, the rate so determined, which constitutes the "regular rate" within the meaning of § 7, is higher than the basic hourly wage rate recited in the contract.

Reference to a typical exhibit contained in the record will show how the thing works out. The settlement sheet for Ernesto Felix, listed as a chauffeur, for the week ending March 13, 1946, shows that the aggregate of his trip commissions for the week came to $34.00 On these trips he was assumed to have worked 58 hours as determined by the published schedule of hourly averages for the various trips. The employee's stated basic wage was 40 cents an hour. Forty hours straight time at 40 cents an hour ($16.00) plus 18 hours overtime at 60 cents ($10.80) makes a total for the week of $26.80. Since this figure of $26.80 was less than the aggregate of the trip commissions, the contract rate of 40 cents an hour was not controlling, and the employee was paid $34.00 for the week. The "regular rate" of the employee for that week is determined by dividing $34.00 by the number of hours worked, which gives a rate of 58.6 cents per hour. Instead of being paid only $34.00 for the week, therefore, the employee should have been paid at the rate of $0.586 an hour for the first 40 hours, and $0.879 an hour for the overtime of 18 hours, or a total of $39.26.

Unlike the situations presented in Walling v. A. H. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and Walling v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 67 S.Ct. 1056, we do not have in the present case a stated hourly rate accompanied by a guaranteed weekly wage where it might be inferred that the flat guaranteed sum was fixed in contemplation both of basic pay and statutory overtime. Here no fixed sum was guaranteed to the employees as weekly earnings. The guaranteed trip commissions, or piece rates, were fixed at a constant figure without reference to whether the trip was made on straight time or overtime.

The case at bar is controlled by the decisions in Walling v. Youngerman-Reynolds Hardwood Co., Inc., 1945, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, and Walling v. Harnischfeger Corp., 1945, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711. The holdings in those cases are summarized in the Halliburton case (331 U.S. at page 24, 67 S.Ct. at page 1059) in terms which are obviously applicable to the case at bar:

"In Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 1250, 89 L.Ed. 1705, and Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1250, 89 L.Ed. 1711, the contracts established two alternative methods for computing each employee's wages. One was to multiply his straight-time hours of work by a specified basic hourly rate, and his overtime hours by one and one-half that rate, and add the products. The other was to multiply the number of jobs done by a

212

specified piecework rate. The employee was entitled to be paid the greater of these two sums. The method of computing the amount due at piecework rates, which were constant for work done on both straight-time and overtime hours, of course negated any possible inference that the payment of such amount contemplated legal overtime compensation. The specified hourly rates were so low, however, relative to piecework rates, that the latter were always, or almost always, determinative of the wage actually to be paid. These cases held merely that such specified hourly rates were not the 'regular' rates of wage payments to which they were not related, and which were computed according to a necessarily inconsistent method."

■ The record establishes violations by the employer of the requirements of § 7 with reference to overtime compensation and the requirements of § 11(c) as to the keeping of records. These violations were continuing at the time of the trial, and there is no indication that they will cease in the absence of an injunction. The Administrator was entitled to equitable relief.

The judgment of the District Court dismissing the complaint is vacated and the case is remanded to that court for further proceedings consistent with this opinion.