Maurice J. TOBIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

KEYSTONE MANUFACTURING COMPANY, Inc., a Corporation, Garland Anthony and Ray H. Parham, Defendants.

Civ. No. 552.

United States District Court
W. D. Arkansas, El Dorado Division.
April 5, 1952.

**232**

Earl Street, Regional Atty., Dept. of Labor, Dallas, Tex., Harry Campbell, Jr., Asst. Regional Atty., Dept. of Labor, Dallas, Tex., for plaintiff.

L. B. Smead, Camden, Ark., Walter L. Brown, El Dorado, Ark., James M. Rowan, Jr., Camden, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

Plaintiff brings this action seeking to enjoin defendants from violating certain provisions of the Fair Labor Standards Act of 1938, as amended, relating to overtime compensation, Sections 7 and 15(a) (2), records, Sections 11(c) and 15(a) (5), 29 U.S.C.A. §§ 207, 215(a) (2, 5), 211(c), and the shipment of goods in interstate commerce in the production of which some of their employees were employed in violation of Sections 7, 15 (a) (1). In due course defendants filed answer denying the material allegations of plaintiff's complaint, and thereafter, on March 13, 1952, the case was tried to the court. At the conclusion of the presentation of the testimony, the court took the case under advisement, and granted the parties time within which to procure and file an exhibit pertaining to defendants' records on certain of their employees and within which to file with the court a résumé of their contentions and arguments in support thereof, in the form of letters addressed to the judge. The exhibit and the letters have now been filed, and the court, after considering the pleadings, the testimony, the exhibits, and the letters of the respective parties, now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

**1**

Plaintiff brings this action in his capacity as Secretary of Labor, United States Department of Labor, to enjoin certain alleged violations of the Fair Labor Standards Act of 1938, as amended 29 U.S.C.A. § 201 et seq.

Defendant, Keystone Manufacturing Company, Inc., is a corporation organized under and existing by virtue of the laws of the State of Arkansas, having its principal office, place of business, and manufacturing plant at Camden, Ouachita County Arkansas, and is and has been engaged at that city in the production, sale, and distribution of rough hardwood and finished pine lumber.

The defendant, Garland Anthony, is a citizen of the State of Arkansas, and resides in the town of Bearden, Ouachita County, Arkansas, and is and has been the owner of a substantial share of the capital stock of the defendant, Keystone Manufacturing Company, Inc., and is and has been president of said corporation, but has not and is not actively participating in the direction of the business of the corporation, or the work and supervision of its employees.

The defendant, Ray H. Parham, is a citizen of the State of Arkansas and resides in the City of Camden, Ouachita County, Arkansas, and is and has been general manager of the operations of

said corporation and responsible for the day to day operations thereof. In such capacity, he has and is actively managing, supervising, and directing the business and operations of said corporation, the work of the employees of the corporation and the relations between the corporation and its employees, the hours worked by them, and other conditions and practices of employment maintained by the said corporation.

**2**

At all times pertinent hereto the defendant, Keystone Manufacturing Company, Inc., has employed and is employing approximately 127 employees in and about its place of business in Camden, Arkansas, in the production of rough hardwood and finished pine lumber. Substantial quantities of the goods produced by said employees have been, and are being, produced for interstate commerce, and have been, and are being, shipped, delivered, transported, offered for transportation and sold in interstate commerce.

**3**

There are two classes of employees involved in this proceeding: (1) Piece rate saw hands, or log cutters; and (2) various employees working irregular hours who were and are paid a certain hourly and overtime rate with a weekly guarantee for a specified number of hours based upon the rate so specified.

The saw hands were paid the largest sum arrived at under alternative computations for the work done by them. That is, (1) at the rate of $4 per thousand feet per team, or $2 per man, at the beginning of the period involved, from December, 1949 to June, 1951 (plaintiff's exhibit No. 1), and for the latter portion of the period at the rate of $5 per team, or (2) at the rate of 75 cents per hour for 40 hours and time and one-half, or $1.125, for all hours in excess of 40 hours, whichever total sum was the geater.

The plaintiff contends that this method of payment was improper, and that they should have been paid on the basis of their regular rate of pay, arrived at by dividing the sum received by them on a piece rate basis by the total number of hours worked in that week, and for the first 40 hours they should have been paid at such regular rate and for all hours in excess of 40 hours the rate would be one and one-half times the said regular rate. Had this method been followed, the piece rate saw hands would have received weekly sums slightly larger than those actually received, and is convincing that these employees were in fact paid on a piece rate basis and not an hourly weekly rate.

**4**

As to category (2), these employees worked at various jobs, such as saw filer, millwright, planer operator, sawyer, etc., which necessitated irregular hours of work. All such employees demanded and were given guaranteed weekly earnings in varying amounts, which based upon the maximum hours worked by any such employee in any week exceeded the minimum hourly wage requirement of the Act. And, the controversy here revolves around the records kept on these employees and the payment of overtime based upon one and one-half times their regular rate of pay for all hours in excess of 40. Concerning those employees who testified the records, plaintiff's exhibit No. 2, and the ore tenus testimony disclose the following:

(1) Employee Earl Hardin. This employee went to work for defendant, Keystone, in January, 1948. His original agreement was weekly pay based upon 60 hours worked at a regular rate of pay of 60 cents per hour, or a weekly total of $42. He started drawing $51.85 in October, 1950, and continued drawing the same amount until the date of the trial. During that time his hourly rate was increased progressively to 85 cents, 94½ cents, and $1.095, and his maximum hours under his guarantee were decreased in accordance with the increase in hourly rate so that he continued to draw the same weekly pay. On one occasion, on January 20, 1951,

he worked an hour over the maximum, at that time 50 hours, and was compensated for that additional hour at the rate of one and one-half times the hourly rate set up in the records. The maximum hours guarantee was set at 50 from January 13, 1950, to February 23, 1952, when it was decreased to 45. During this period he worked from a low of 8 hours to a high of 51 hours. He worked more than 40 hours on seven weeks out of that period.

(2) Employee Will James. This employee went to work for defendant, Keystone, about 9 years ago, at $60 per week. Subsequently he was raised to $73.50 and since October 14, 1950, he has been drawing $77. The records reveal that his weekly salary was based on a 60 hour week at an hourly rate of $1.05. This was subsequently changed to 50 hours at $1.40, and later to 40 hours at $1.925, the latter change occurring February 24, 1952. He has not worked more than 40 hours since February 3, 1951, and at no time during the period covered by plaintiff's exhibit No. 2 did he exceed the guarantee. During the period his hours varied from 8 to 40. However, it appears that very frequently he did work 40 hours, which is the present guarantee, and during the three weeks shown by the records since that change he worked 34, 32 and 37 hours. The employee did not recall any discussion concerning his hourly rate, but did remember that he was advised as to what his rate would be.

(3) Employee R. J. Mays. This employee has worked for defendant, Keystone, for approximately 5 years as a planer operator. He started at $65.10, based upon a 60 hour guarantee at an hourly rate of 93 cents. His hourly rate was subsequently raised to $1.00, which at the same guarantee, resulted in $70 per week; and since December 16, 1950, has been drawing $73.50, based at first upon a 60 hour guarantee at $1.05, beginning January 27, 1951, a 50 hour guarantee at $1.33¾, and since February 23, 1952, at $1.41½. Since January 27, 1951, he has never exceed-

ed the guaranteed hours, but in most of the weeks he exceeded 40 hours and on several occasions worked 47 and 48 hours. During this period his hours varied from a low of 19 to a high of 48 hours. He did not recall discussing the hourly rate, but did keep his own time.

(4) Employee H. D. Mullins. He started work approximately 5 years ago as an engineer, and his type of work demands that he be on call at all times. Throughout the entire period covered by the records his guarantee has been based upon 70 hours. Since November 18, 1950, it has been at an hourly rate of 84 cents which resulted in weekly earnings of $71.40. At no time did he exceed the 70 hour guarantee, and during the latter period his hours varied from a low of 37 to a high of 70. However, in most instances he worked less than 60 hours. He did not recall discussing his hourly rate, and was only interested in his weekly guarantee, without which he would not have worked.

(5) Employee V. C. Mullins. This employee works as a millwright and has been employed for approximately 5 years. His employment also necessitates long hours on occasion and he is subject to call when repairs are needed. His guarantee is based upon 60 hours. He was originally on an hourly rate of $1 with weekly earnings of $70, later on an hourly rate of $1.05 with earnings of $73.50, and since October, 1950, he has been on an hourly rate of $1.10 with weekly earnings of $77. During the period January 20, 1951, to date he has never exceeded his guarantee, and his weekly hours varied from a low of 18 to a high of 57 hours. Quite often his work week exceeded 50 hours. He now keeps his own time records.

(6) Employee Albert Williams. This employee has been employed as a sawyer for approximately 4 years. Until January, 1951, he worked under a 60 hour guarantee at an hourly rate of $1.15, which resulted in weekly earnings of $80, from that date until January, 1952, he worked under a 50 hour guarantee at $1.45¾ per hour, which likewise re-

sulted in weekly earnings of $80, and since this latter date he has worked at a straight $1.75 per hour, which, on a 40 hour week, results in $70 per week. At no time did he exceed his guarantee, and since January, 1952, he has not exceeded 40 hours, although it appears that if he does, he will be paid one and one-half his hourly rate of $1.75 for all hours in excess thereof. Also it appears that until January 6, 1951, the "overtime" rate on this employee was incorrectly figured, in that it was slightly under one and one-half times the hourly rate in effect at that time. This employee, as in the case of the others, was not interested in and recalled no particular discussion about his hourly rate, but would not have worked without the weekly guarantee. Since January 27, 1951, he has not worked more than 40 hours, and on one occasion he worked only 8 hours. However, since January 26, 1952, the records indicate that he has been paid strictly on a $1.75 per hour basis, with his weekly earnings varying in accordance with the hours worked.

(7) Employee W. M. Harris. The records are incomplete to October 1, 1951, but it is not questioned that his salary was increased on the latter date so as to qualify him for an exemption as an administrative employee.

(8) Employee Dorothy Johnson. This employee did not testify, but the records indicate that she is employed as a bookkeeper. Until February, 1952, the records reveal that she was working under a 50 hour guarantee, which at the applicable hourly rate resulted in weekly earnings of $53.35. Since February, 1952, however, she is on a 40 hour week, with an hourly rate of $1.33, which results in $53.35 per week.

5

Until the first part of 1951, the records on all employees indicate that a mere formal entry of hours was made, without any attempt to record the actual hours worked. However, since that time in most instances, and for a few months prior to the trial in all instances, the records indicate that the actual hours worked were accurately recorded, and that the defendants are making a good faith attempt to comply with the requirements of the Fair Labor Standards Act of 1938, as amended, and the regulations thereunder.

6

It appears that representatives of the Department of Labor have investigated the defendant, Keystone, since October, 1950, on two or three occasions. The findings of the investigator were discussed with Mr. Parham. The only changes made as the result thereof were the placing of Mr. Harris on a salary so as to qualify him as an administrative employee and the change in record keeping to show actual hours rather than the guaranteed hours. As to the other suggestions, Mr. Parham was of the opinion that the records and payment method were correct, and informed the investigator that his opinion was based upon the advice of his accountant.

Mr. Parham testified that his failures to comply with all requests, were based upon his honest and considered difference of opinion, and that he was willing to comply with all requirements of the law, if it appeared that his position was erroneous and that of the investigator correct.

### Discussion

The court feels that a brief discussion of the law to be applied to the facts is necessary.

■■ Considering first the piece rate log cutters, it is settled that the Fair Labor Standards Act of 1938, as amended, does apply to piece workers. United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301. And, it is equally clear that the method of compensation employed by the defendant, Keystone, as to the piece rate log cutters is violative of Sec. 7 of the Act. As appears in the findings of fact, the agreement was to pay them the greater sum under the alternative method of computation, that is, 75 cents per hour plus one and one-half times that amount for over 40 hours, or

$4 and later $5 per team per thousand feet. A similar agreement and method of compensation was condemned in Walling v. Youngerman-Reynolds Hardwood Co., Inc., 325 U.S. 419, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705. In that case, there were agreements to pay the employees a basic rate of 35 cents per hour for the first forty hours and for time over 40 hours one and one-half times such basic rate, with a guaranty that the employee would receive a sum figured on the basis of 80 cents per thousand feet for flat stacking and 70 cents per thousand board feet of lumber ricked. The court held that the 35 cent per hour rate was obviously an artificial one, and that the regular rate, referred to in Section 7, means the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed, and "in the case of piece work wages, this regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked". When the 70 and 80 cents per thousand was translated into an hourly basis it resulted in an average regular rate of 59 cents, it being observed that the individual regular rate would vary, in accordance with the result of the approved method of calculation set forth above. And, while it was true that the parties could fix any regular rate in excess of the minimum, under the facts of the case, the 35 cent rate simply was not the regular rate under any normal circumstances. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S. Ct. 1223, 86 L.Ed. 1716, which will be discussed subsequently, was distinguished on the ground that the rate fixed by the wage agreements in that case was the actual regular rate at which the workers were employed.

Therefore, the court is convinced that here, as in Walling v. Youngerman-Reynolds Hardwood Co., Inc., supra, the 75 cents minimum plus one and one-half for overtime, was entirely artificial and bore no relation to the log cutters actual rate, which was based on a per thousand feet cut basis. Thus, their regular rate for purposes of Sec. 7 of the Act would be computed by dividing the earnings received each week by the number of hours actually worked, which would govern their compensation for the first 40 hours, and one and one-half times that "regular rate" would be their correct overtime rate. In failing to so compensate these employees, defendant, Keystone, has been and is violating the Act. See, also, Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711.

As to the other employees involved, with the exception of Harris, as to whom there is no further question of a violation, it is apparent that the defendants were attempting to compensate them on the basis of a "Belo" type agreement, whereby a certain hourly rate is set up by agreement, with a guarantee that the employee shall receive weekly earnings on the basis of a specified guaranteed number of hours, whether or not the employee actually works that number of hours in any particular week. Such an agreement was approved in Walling v. A. H. Belo Corp., supra, as to workers whose occupations made irregular hours necessary. Such agreements have been expressly reaffirmed, Walling v. Halliburton Oil Well-Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312, but as expressed in Bay Ridge Co. v. Aaron, 334 U.S. 446, 462, 68 S.Ct. 1186, 1195, 92 L.Ed. 1502, "we have reaffirmed that decision as a narrow precedent principally because of public reliance upon and congressional acceptance of the rule there announced." And, it has been emphasized by the various decisions that the rate fixed in such agreements must in fact be the "actual regular rate at which the workers were employed", and "the case is no authority, however, for the proposition that the regular rate may be fixed by contract at a point completely unrelated to the payments actually and normally received each week by the employees." Walling v. Youngerman-Reynolds Hardwood Co., Inc., supra, 325 U.S. at page 426, 65 S.Ct. at page 1246.

In this regard the court in McComb **v.** Roig, 1 Cir., 181 F.2d 726, 729, stated:

"There must be such reasonable relation between the stated hourly rate and the guaranteed weekly sum, so that in any week in which the employee worked hours in excess of 40, but not enough to exceed the weekly guaranty, the parties may fairly be deemed to have contemplated that the guaranteed weekly payment embraced two factors, (1) a sum equal to 40 hours of employment at the basic hourly rate, and (2) the balance, regarded as the equivalent of not less than one and one-half times the basic hourly rate for each hour worked in excess of 40.

\*　\*　\*　\*　\*　\*

"It is possible, of course, that the relation between the hourly rate and the guaranty might be set by the employer with reference not to a roughly estimated average workweek but to what the employer supposes would be the maximum possible workweek. In such a case, if the employer's forecast proved accurate, the workers would never exceed their guaranties; the purported hourly rate would never control the amount of the weekly pay and would pretty surely be found to be fictitious."

The result of rejecting the rate so agreed upon is that the regular rate will be computed by the usual method of dividing the weekly earnings by the total number of hours worked.

The "Belo" type agreement is now dealt with in the statute. 29 U.S.C.A. § 207(e) provides:

"No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 206 (a) of this title and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

Thus, in order for a contract to be valid under Sec. 207(e), (1) the duties of the employee must necessitate irregular hours of work. The facts in this case clearly demonstrate the irregularity of these employees' hours.

(2) There must be a bona fide individual contract, or a collective bargaining agreement. A fair analysis of the facts on this point, results in a conclusion that specific contracts or agreements were not entered into. Of course, as a practical matter, the main and in all probability the only concern of the various employees was the amount they would take home each week, and it was immaterial to them how that sum was arrived at or how such earnings were carried on the books. However, regardless of whether these matters are merely technical in so far as the defendant, Keystone, and these employees are concerned, there are certain to be cases where employers will abuse the requirements of the Act at the expense of their employees if exact compliance is not required. In that manner only can the congressional purpose be achieved. Thus, in order to bring itself within the terms of Sec. 207(e), the defendant, Keystone, should enter into bona fide agreements with its employees.

(3) The contract must provide for a specific hourly rate of pay, which must be the actual regular rate of pay and bear a reasonable relationship to the guarantee and to the hours worked. The key word is "reasonable", and no exact formula has been or can be set forth. The judicial precedent dealing with the "Belo" type contract should be the guide to "regular rate of pay" and the employer should examine the records periodically to determine whether a change is necessary.

The facts amply set forth the situation as to hours worked under the various guarantees to the employees involved herein and need not be repeated. However, as a guide to the defendant, the court feels that it should briefly analyze the records of the various employees. Concerning employee, Earl Hardin, the court is of the opinion that the facts justify the present hourly rate and guarantee, if embodied in a bona fide contract, inasmuch as the guarantee is 45 hours, and it appears that his usual workweek approximates that total. Also, it appears that on the one instant he exceeded the guarantee he was paid in accordance with the hourly rate set up as to him. The same is true of the employee, Will James. His present guarantee is 40 hours, and it appears that his normal workweek will approximate that total. However, his time records should be examined periodically to ascertain if this continues to be the case. As to employee, R. J. Mays, it appears that his guarantee has been too high and that it should have been adjusted. A change was made in his hourly rate on February 23, 1952, but the court is uncertain as to whether a change was made in the guarantee, inasmuch as he continued to draw the same weekly pay. The guarantee as to employee H. D. Mullins is clearly violative, as will subsequently appear in this discussion, and the agreement with him will have to be adjusted. It appears that the guarantee as to employee V. C. Mullins, 60 hours, has remained the same for some time, and has never been exceeded. It, also, should be adjusted to more reasonably conform to the hours actually worked over the period. It appears that the employee, Albert Williams, is now on a straight hourly basis, and that there is no violation as to him. As to employee, Dorothy Johnson, the records indicate that she is now on a 40 hour guarantee, and if her actual hours worked approximate this, which in all probability they will, there is no violation as to her.

(4) The contract must provide for the payment of overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of 40, and for a minimum weekly guarantee for not more than 60 hours based on the rate so specified. As appears in the findings, the guarantee as to employee H. D. Mullins has been and is 70 hours. As such, it is clearly violative of the statute, and will have to be adjusted to conform not only to this condition but to the others hereinabove set forth and discussed.

Also, it is apparent without discussion that accurate records of the hours actually worked will have to be maintained. This, of course, is a continuing obligation, but it does appear at this time that such records are being maintained.

■■ The Act does not place an impossible burden upon the employer, but it does contemplate a good faith reasonable effort to comply. The court cannot write the contracts for an employer, but can only interpret what the employer has done in the light of the requirements of the Act. The court has tried to set forth, in accordance with its understanding of the facts of this case, the particulars wherein it believes the defendant to be out of compliance, and has attempted to set down the standards which should govern defendant in seeking to bring itself into compliance. It is aware that the injunction process is designed to deter, not to punish, and that a request for an injunction is an appeal to the sound discretion of the court. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; McComb v. Goldblatt Bros., Inc., 7 Cir., 166 F.2d 387. However, it is also aware of its obligation as a trial court, which is expressed by the court in McComb v. Wyandotte Furniture Co., 8 Cir., 169 F.2d 766, 770, as follows:

"Where the legality of an employer's previous acts remains in controversy under the Fair Labor Standards Act, the Administrator ordinarily should be granted an injunction, even though the employer has ceased the violation, unless the trial court soundly is convinced from the situation that there is no reasonable probability of a recurrence of the

acts. And where a violation still persists at the time of the trial and is not inadvertent, an injunction clearly should be granted."

Thus, the court feels that it must grant the injunction as to the defendant, Keystone Manufacturing Company, Inc. It may, of course, apply to the court for relief therefrom at any time it feels that it has brought itself into compliance. As to the individual defendants, Garland Anthony and Ray H. Parham, the court feels that the facts do not warrant the issuance of an injunction. Nothing appears from the record which indicates that Mr. Anthony is or has been exercising any more control and direction over the defendant, Keystone, than any other stockholder, and as to the defendant, Parham, the court feels that he was acting in good faith and in accordance with an honest difference of opinion, and that, therefore, in the exercise of its sound discretion, the court should not place him under an injunction.

### Conclusions of Law

1

The court has jurisdiction of the parties and of the subject matter of this cause.

2

All of the employees of defendant, Keystone Manufacturing Company, Inc., involved herein, are engaged in interstate commerce, the production of goods for interstate commerce and in processes and occupations necessary thereto and are subject to Sections 6 and 7 of the Fair Labor Standards Act of 1938, as amended.

3

Defendant, Keystone Manufacturing Company, Inc., has violated the provisions of Sections 7 and 15(a) (2), in failing to compensate said employees in workweeks wherein said employees were employed in excess of 40 hours at rates not less than one and one-half times their regular rates of pay for said employment in excess of 40 hours. The particulars of the violations are set forth in the "Discussion" and for that reason are not repeated here.

4

In failing to keep, maintain and preserve adequate and accurate records of the hours worked by said employees, and of the said employees' true regular rate of pay, as required by the Act and regulations thereunder, the defendant, Keystone Manufacturing Company, Inc., has violated the provisions of Sections 11(c) and 15(a) (5) of said Act.

5

In shipping, delivering, transporting, offering for transportation and selling in interstate commerce from its place of business to other States, goods, in the production of which employees were employed in violation of Section 7 of the Act, the defendant, Keystone Manufacturing Company, Inc., has violated the provisions of Section 15(a) (1) of said Act.

6

The plaintiff is entitled to an injunction restraining the defendant, Keystone Manufacturing Company, Inc., from failing and refusing to compensate its employees in workweeks wherein they are employed in excess of 40 hours at rates not less than one and one-half times the regular rates at which they were employed for said hours in excess of 40 as required by Sections 7 and 15(a) (2) of the said Act; from failing and refusing to keep, maintain and preserve adequate and accurate records of the hours worked and wages paid their employees as required by Section 11(c) of said Act and the regulations issued thereunder; and from shipping, delivering, transporting, offering for transportation and selling in interstate commerce from its said place of business to points without the State of Arkansas, goods in the production of which any of its employees were employed in violation of Section 7 of the said Act.

7

The complaint of plaintiff should be dismissed as to the defendants, Garland Anthony and Ray H. Parham.