## BEECHWOOD LUMBER CO. et al. v. TOBIN.
### No. 13962.

United States Court of Appeals
Fifth Circuit.
Nov. 15, 1952.

George C. Kennedy, Manchester, Ga., for appellants.

William S. Tyson, Solicitor, Bessie Margolin, Asst. Sol., William A. Lowe and Joseph D. Mladinov, Attys., U. S. Dept. of Labor, Washington, D. C., and Beverley R. Worrell, Reg. Atty., Birmingham, Ala., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This appeal questions the validity of an injunction issued by the trial Court, in a proceeding against the appellant corporation and its named officers, which enjoined appellant from paying any of its employees subject to the Fair Labor Standards Act of 1938, as amended, compensation at rates less than 75¢ per hour; from employing them for a work week longer than 40 hours without the payment of statutory overtime compensation; from shipping in interstate commerce goods produced by any employees who were employed at rates of pay less than those specified; and from failing to make and keep proper records of wages, hours, and other conditions of employment, as prescribed by regulations of the Administrator.[1]

The appellant-employer is engaged in the production of lumber and at the time of the filing of the complaint employed a total of 166 employees at three plants in Georgia. This action involves operations of only two of these plants where there was a total of 112 employees employed in producing, under Government supply contract, lumber from timber cut on Government military reservations. It is admitted that prior to the decision of the U. S. Supreme Court in Powell v. U. S. Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, the lumber company did not pay the minimum wages required by the Act (although overtime compensation was paid on the sub-minimum rate), because of the appellants' belief that the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., was not applicable to their employees because of appellants' status as contractors with the Government. Following this decision holding to the contrary, and after notice thereof was conveyed to the defendants on May 17, 1950, the defendants did not come into compliance with the Act and pay the minimum and overtime compensation thereby required until August, 1950. Thereafter, except as to six employees, it appears to be conceded that the employer came into compliance as regards the matter of minimum and overtime compensation. The status of these six employees presents a primary question in the case. As to them, the defendant contends that they were employed under guaranteed wage contracts which evidence full compliance with the statute, as amended,[2] and in accord with the adjudicated cases. These contracts contained a recital that the work hours were irregular; established an agreed base rate of pay; a guaranteed minimum weekly payment and a work week not to exceed 55 (in one case 50) hours, for which the employees should be paid the base rate for 40 hours and one and one-half times the base rate for all excess hours in any work week, and that the minimum would be paid in any work week; an agreement by the employee that he would not work more than the prescribed total hours without written direction from an officer of the employer; that the contract is made pursuant to the provisions of the Fair Labor Standards Act; and that the rate of pay, hours of work and guaranteed wage shall continue until changed.

Upon consideration of the evidence [3] and the applicable law, the Court found that until the defendants received notice of the decision in Powell v. U. S. Cartridge Co., su-

---

1. 29 U.S.C.A. §§ 206(a) (1), 207(a), 215 (a) (1), 211(c).

2. 29 U.S.C.A. § 207(e).

3. No testimony was offered by the defendants.

pra, there was no "willful violation" of the Fair Labor Standards Act, supra, but that thereafter, for two and one-half months, the defendants "continued their course of admitted violation", but thereafter, "except for the questioned wage contracts, did come into substantial compliance with the provisions of the Act." The Court noted that in the answer to the complaint, filed by the defendants on January 4th, 1951, the defendants alleged as a defense that certain employees having irregular hours of employment were employed on guaranteed wage contracts. Whereas, "the wage contracts appear to have been executed in March of 1951, and it does not appear from the testimony in the case that any wage contracts existed prior to the date of the execution of the written contracts." It was further found that the method of timekeeping employed by the defendants, by which the employees involved kept their own time, and made reports of the hours worked to the defendants, who accepted the reports and kept their records accordingly, was not a proper system of timekeeping; and that employees were not always aware of changes in hourly rates, since such changes were, in reality, mere record changes and made no substantial change in the amount of weekly wages received by the employees. The Court expressly found that the premise of the contract of irregularity of hours was not true in that "the duties of the employees working under the wage contracts do not normally or usually require irregular hours. With minor exceptions, irregular hours have not been, and will not be required of the employees, and there is no substantial irregularity of hours shown." Finally, the Court found "The wage contracts are in fact just framed to permit the weekly wage to control, and the hourly rates though stated in the contract, are not in fact controlling, and the contracts themselves are designed to indicate compliance with the provisions of the Fair Labor Standards Act, but the effect is to avoid the payment of overtime compensation at one and one-half times the real hourly rate. The weekly guarantee constitutes the real wage and should be used in computing the hourly rate."

The defendants here contend that the findings of the Court are without evidence; that the evidence does not support the findings of fact and conclusions of law that the wage contracts are invalid, nor the finding that the defendants did not maintain a proper system of timekeeping.

We do not uphold the contentions of error, for, upon consideration of the evidence, it is clear that the findings of the trial Judge upon the controlling issues are not without adequate support in the evidence and can not be said to be clearly erroneous. The Court was amply justified in considering, as it did, the time and manner in which the wage contracts were executed, and that they had not theretofore existed, contrary to the averments of defendants' answer. There can be no dispute that there was no evidence of substantial irregularity of hours of duty required of the employees in question. The ultimate finding that the allocation of compensation to statutory hours and overtime was arbitrary, and an effort only to indicate compliance with the statute, so that there was no valid wage contract in fact, could properly have been based, as we think it was, upon consideration of testimony which indicates that the employees involved looked primarily to the weekly guaranteed wage as their compensation, and not to the written arrangement for hourly compensation; that in cases where changes were made in the hourly rate or weekly compensation no change was made in the contract, and other circumstances to which we have already referred. All of these circumstances are permissible in determining the fact question of what is the regular rate of pay, and whether there is truly a *bona fide* contract fixing and prescribing it, and in the determination of this question, of course, the mere written words of the paper are not, in themselves, controlling.[4]

4. 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 204, 67 S.Ct. 1179, 91 L.Ed. 1432, and citations; Bay Ridge Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502.

The trial Court, recognizing and giving effect to this principle, determined, upon sufficiently supporting evidence, that the facts of this case brought it within the condemnation of the rule declared in Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, and not within the protection of the principle laid down in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, which decision affirmed the ruling of this Court in Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207. The principle of the Belo case has been steadfastly adhered to, even against vigorous efforts to secure review and reversal of the rule there announced that the Fair Labor Standards Act did not, under the circumstances there present, prevent the employer and employees from actually agreeing upon a guaranteed wage contract. Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312. Furthermore, this principle has received statutory recognition by the provisions of Section 7(e) of the Act as amended in 1949.[5] However, the point here is that the present is not the type of case which the Courts had for consideration in the Belo and Halliburton cases, supra. On the contrary, it falls within the limitations which the statute and those decisions recognize, in that there is an absence of any necessary irregularity of hours of work, and the circumstances fail to disclose any real agreement which may be said to establish a regular rate of pay.

Two other points remain. We think the appellant can secure no help from the provisions of subsection (d) (2) of the amendment of Section 7 of the Fair Labor Standards Act of October 26, 1949,[6] since the provision therein is that the regular rate of pay will not be deemed to include "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause * * *" and no such payments are here involved. The appellee argues, correctly we think, that the key word in the provision is "occasional" and that in the present case the purported agreement provides for regular compensation and does not purport to guarantee against only occasional periods. A further contention of appellant is predicated upon the claim, made for the first time in the brief here, that two of the six employees involved are shown to come within the "administrative exemption" of the regulations.[7] This question was neither pleaded nor presented to the trial Court and hence is not properly before us for consideration.[8] We therefore refrain from any comment other than to say that the contention is, in view of the record, of very doubtful validity.

The appellant fails to show any error requiring reversal of the judgment granting the injunction against the prescribed violations of the statute and, for the reasons stated, that judgment is

Affirmed.

5.  29 U.S.C.A. § 207(e).

6.  29 U.S.C.A. § 207(d) (2).

7.  See Rules and Regulations implementing Fair Labor Standards Act, Part 541, § 541.2, 1951 Cumulative Pocket Part, Title 29 U.S.C.A.

8.  Rule 12(h), Federal Rules of Civil Procedure, 28 U.S.C.A.; 5 Cir., Carter v. Powell, 104 F.2d 428; Bowles v. Strickland, 5 Cir., 151 F.2d 419; Schmidtke v. Conesa, 1 Cir., 141 F.2d 634; Mid-Continent Petroleum Corp. v. Keen, 8 Cir., 157 F.2d 310.