James P. MITCHELL, Secretary of
Labor, Plaintiff,

v.

Meyer FEINBERG, Defendant.

Civ. No. 12063.

United States District Court
E. D. New York.

June 28, 1954.

Stuart Rothman, Sol., Washington, D. C., William A. Lowe, Chief of Trial Litigation, Washington, D. C., John A. Hughes, Regional Atty., New York City, Joseph D. Breitbart, Asst. Regional Atty. U. S. Dept. of Labor, New York City, for plaintiff.

Benjamin Cooper, New York City, for defendant.

GALSTON, District Judge.

This is an action by the Secretary of Labor for an injunction under Section 17 of the Fair Labor Standards Act of 1938, as amended, restraining the defendant from violating Sections 15(a) (2) and 15(a) (5) of the Act, relating to the overtime and record keeping requirements of the Act respectively. 29 U.S.C. A. §§ 215(a) (2), 215(a) (5), and 217.

The defendant is the owner and operator of a number of trucks engaged in the delivery of goods and the pick-up of garments in the completed state between various points in the City of New York. He employs a number of chauffeurs and chaffeurs' helpers to do this work. It has been stipulated that substantially all of the goods handled and transported by these employees have been and are shipped and sold in interstate commerce, and that the defendant's employees have been and are engaged in the production of goods for interstate commerce within the meaning of the Act. The defendant denies that he has violated or is violating

the provisions of Sections 7 and 15(a)(2) of the Act, relating to overtime hours and pay, or the provisions of Sections 11(c) and 15(a) (5) of the Act with respect to keeping adequate and accurate records of his employees' wages and hours.

Section 7(a) of the Act provides:

"Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a).

Section 11(c) of the Act provides as follows:

"Every employer subject to any provision of sections 201–219 of this title or of any order issued under said sections shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall perserve such records * * *." 29 U.S.C.A. § 211(c).

Plaintiff alleges that defendant has failed to pay his employees time and one-half overtime compensation which is based on the employees' regular rates of pay, as required by the Act, and that the contract hourly rate of pay does not determine the weekly compensation paid to the employees. The defendant contends that his method of overtime payments is based on certain collective bargaining agreements with the union of which his employees are members, and that these agreements come within Section 7(e) of the Act providing:

"No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining * * * if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 206(a) of this title and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified." 29 U.S.C.A. § 207(e).

The determination of whether the wage arrangement of the defendant violated the overtime provisions of the Act requires an examination of such arrangements to see if they are based on "the regular rate at which he [the employee] is employed", within the meaning of section 7 of the Act. It is not disputed by the plaintiff that if the case of Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, is applicable, the contract rate here must be regarded as the "regular rate" and valid within the meaning of the Act.

The plaintiff contends that the Belo doctrine is "a 'narrow precedent' of very limited application," in view of later Supreme Court cases construing it. Following Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312, our circuit, in McComb v. Utica Knitting Co., 2 Cir., 164 F.2d 670, 673, said:

"We must, therefore, now take the Belo doctrine as an established gloss on the Act, one which constitutes an exception to the usual rule—as to the actual 'regular rate'—announced in the Missel [Overnight Transp. Co. v. Missel, 316 U.S. 572], Helmerich & Payne [Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29], Youngerman-Reynolds [Walling v. Youngerman-Reynolds, 325 U.S. 419, 65 S.Ct. 1242, 89 L. Ed. 1705] and Harnischfeger cases

[Walling v. Harnischfeger, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711]. In other words, a contract rate which, in line with those cases, would otherwise be deemed an artificial regular rate, is not so when the contract provides for a guarantee a la Belo."

There is, in the instant case, as in the Belo case, a provision in the collective bargaining contracts involved which sets forth a basic rate of pay per hour, for the maximum hours fixed by the Act, and not less than one and one-half times that rate per hour for overtime, with a guaranty that the employee should receive each week, for regular time and overtime, not less than a specified wage. In addition the contract provides that the employees shall be guaranteed no less than eight hours overtime per week for work actually performed during the weeks worked. Overtime work is defined in the contracts as "work performed in excess of forty hours in any one week." Thus, each employee is guaranteed a workweek of 48 hours, with eight hours of the 48 to be considered overtime, entitling him to one and one-half times the stated hourly rate of pay.

In the Utica Knitting case, supra, the Court of Appeals for this Circuit pointed out that the mere fact of a guaranteed wage does not suffice to bring a wage arrangement within the Belo doctrine. In addition to such guarantee, there must be "a condition of irregularity or instability of work, so that the guaranty yields the employees a stability of employment and income otherwise absent." McComb v. Utica Knitting Co., supra, 164 F.2d at page 673.

In the case at bar, the defendant's employees who were called to testify stated that they averaged 40 to 42 hours and 42 to 44 hours of work weekly. Their testimony did not give a breakdown of the work according to the hours worked each week. The plaintiff, however, put in evidence copies of "Wage Computation and Transcription Sheet" records of the employees, showing the hours worked each week, beginning in January, 1952.

Limiting the examination of these payroll transcriptions to the period from January 1952 through August, 1953, since the plaintiff contends that the defendant has failed to keep accurate and proper records subsequent thereto, we find that the weeks in which the employees worked the minimum of 40 hours or more comes to about 82.5% of the total number of weeks worked, and the weeks in which they worked under 40 hours comes to about 17.5% of the total weeks worked. In the Belo case, as pointed out in the Utica Knitting case, the comparable figures were 82% and 18%, Table 1, Appendix, 164 F.2d 670, 675.

If the validity of the wage arrangement is to be determined on the basis of this comparison alone, it would have to be upheld. However, as the plaintiff points out, in the Utica Knitting case there were many weeks in which the employees worked in excess of the guaranteed hours. In these weeks the hours in excess of the guarantee were controlled by the hourly rate and not by the guaranteed weekly wage. Table 2, Appendix, 164 F.2d 670, 676–677.

Although the opinion in the Utica Knitting case does not expressly dwell on this point, the Belo case appears to have considered it a factor. The Supreme Court, 316 U.S. at pages 631–632, 62 S.Ct. at page 1227, states:

"* * * when an employee works more than 54½ hours in a single week, he is admittedly entitled to more than the $40 guarantee. The record shows that in such a case, the employee is paid at the rate of $1.00 an hour (150% x $.67) for each hour of overtime. In this situation, then, it is clearly the guaranty that becomes inoperative and the 67 cent hourly rate fixed by the contract that is controlling."

In the Halliburton case, the Supreme Court also stressed the fact that in 20% of the workweeks, the employees worked in excess of the guaranteed workweek hours, and that whenever they did they were paid on the basis of the stated hour-

ly rate with appropriate overtime. 331 U.S. 17, 21, 67 S.Ct. 1056. Therefore, it would appear that the significance of evidence of actual weeks worked in excess of the guaranteed workweek hours, when payments were in fact controlled by the stated hourly rate of pay, is inherent in the Utica Knitting case. Concededly, no employee in the case at bar has ever worked in excess of 48 hours, the guaranteed workweek provided for here. Consequently, the defendant can point to no instance where there has been an actual payment of overtime in excess of the guaranteed 48 hours on the basis of the hourly rate. In the circumstances an examinaton of other facts in evidence becomes relevant on the question of validity of the defendant's wage practices.

Of the three employees who testified, one stated that he does not know his hourly rate and that he doesn't work by the hour, but by the day and week. A second employee testified that he knows of no hourly rate. They stated that to their knowledge they are not entitled to overtime pay until after 48 hours of work. The third employee testified that as a driver's helper he is entitled to a guaranteed week's wage of $84.40, based on 40 hours regular time and 8 hours of overtime a week. To his knowledge this wage scale was based on an hourly rate of pay. He had no knowledge of how the $84.40 weekly guaranteed wage was actually computed.

The defendant testified that he always computed the employees' wages on the basis of the stated hourly rate. However, an examination of the payroll transcriptions sheets shows that in instances where an employee works less than the full five days in a week, he was paid an amount equivalent to one-fifth of the alleged guaranteed weekly salary for each day, regardless of the hours actually worked each day. Moreover, although an employee's payroll sheet indicated that he had worked less than the 40 hours minimum, he was credited with overtime daily. The payroll transcriptions sheets also show that in some instances

an employee who worked four days or less during a week received less than the so-called guaranteed weekly wage.

Upon being questioned with respect to these matters, the defendant maintained he paid by the hour. However, when he calculated the hours worked, as shown on the payroll transcriptions, by the stated hourly rate, he arrived at an amount different from that recorded on the transcriptions sheet as having actually been paid. With respect to the defendant's practice of crediting an employee with daily overtime even though the worker has not worked the minimum of 40 hours, the collective bargaining agreements in evidence, as already pointed out, expressly define overtime as covering work performed only in excess of 40 hours in any one week. These agreements, therefore, do not support the defendant's practice.

With respect to the defendant's practice of granting daily overtime payment to workers in instances where they have worked less than the minimum of 40 hours a week, it was said in 149 Madison Avenue Corp. v. Asselta, 331 U.S. 199, at page 205, 67 S.Ct. 1178, at page 1182, 91 L.Ed. 1432:

"The payment of 'overtime' compensation for non-overtime work raises strong doubt as to the integrity of the hourly rate upon the basis of which the 'overtime' compensation is calculated."

The defendant also sought to explain these various discrepancies on the ground that these particular employees were temporary workers. The provisions with respect to wages, schedules and guarantees in the collective bargaining agreements state:

"Temporary or part-time workers shall not be covered under this paragraph (sub-division); the practice and provisions in force shall continue."

It appears from the defendant's testimony that there was some guaranteed weekly wage even as to temporary workers, as he referred to a "union contract" with provisions for "daily over-

time". However, no evidence was presented as to what constituted the "practice and provisions in force," referred to in the collective bargaining agreements. Moreover, Section 7 of the Fair Labor Standards Act does not by its terms exclude temporary workers from its coverage.

It would appear from the defendant's arguments that his main reliance is on the fact that there exist collective bargaining agreements which he contends he is obligated to follow. However, the Supreme Court has stated that in determining whether there is compliance with the requirement of a "regular rate," what is meant is

"'* * * the hourly rate actually paid for the normal, non-overtime workweek.' Walling v. Helmerich & Payne, Inc., 1944, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29. The regular rate is thus an 'actual fact,' and in testing the validity of a wage agreement under the Act the courts are required to look beyond that which the parties have purported to do." 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 204, 67 S.Ct. 1178, 1181.

The evidence adduced demonstrates that in actual practice the defendant attached little significance to the stated hourly rate in computing the wages of his employees.

In addition to the foregoing, from about August, 1952, the defendant admittedly maintained his records with respect to the hours worked by his employees without any regard to the actual hours worked. He recorded the hours on the individual employee's time sheets without bothering to ask as to the hours the worker had in fact put in.

In sum, it must be observed that the critical question in this case is whether the defendant's practices follow the Fair Labor Standards Act. Even assuming that he showed full compliance with the existing agreement between the Greater New York Tailors' Expressmen Association and the Cloth-

ing Express Drivers and Helpers Union, Local 240, such compliance would not be determinative of the critical issue in this case. It may be added that the union, so far as the record in this case is concerned, has not asserted any violation of the collective bargaining agreement with the employer.

The plaintiff may have a decree for a permanent injunction as prayed for in the complaint.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.