**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,**

**v.**

**BRANDTJEN & KLUGE, Incorporated, Defendant, Appellee.**

**No. 4996.**

United States Court of Appeals First Circuit.

Dec. 15, 1955.

Bessie Margolin, Asst. Solicitor, Washington, D. C., with whom Stuart Rothman, Solicitor, Harry A. Tuell, Atty., Washington, D. C., and Thomas L. Thistle, Regional Atty., Boston, Mass., were on brief, for appellant.

David W. Kelley, Boston, Mass., with whom Peter D. Cole, Badger, Pratt, Doyle & Badger, Boston, Mass., and Felhaber & Larson, St. Paul, Minn., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

In this case the Secretary of Labor filed a complaint seeking an injunction against defendant-appellee forbidding the corporation from violating the overtime provisions of § 7 of the Fair Labor Standards Act of 1938, as amended. 52 Stat. 1063, 63 Stat. 912, 29 U.S.C.A. § 207. The district court found that the wage payments which defendant had been making to its employees in question, in weeks in which any of them worked more than 40 hours, had been in pursuance of bona fide individual contracts of employment which in all respects complied with the requirements of § 7(e) of the Act. Accordingly the court ruled that the evidence did not warrant a finding that the defendant had violated the provisions of § 7, and entered judgment dismissing the complaint, from which judgment the Secretary of Labor has taken the present appeal.

Subsection (e) of § 7 was added to the Act by the amendments of 1949 in order to give specific legislative sanction to wage arrangements of the "Belo" type, which the Supreme Court had theretofore approved, by a sharply divided Court and without the aid of express statutory language, in Walling v. A. H. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

The difficulty which gave rise to the litigation in the Belo case was that, in § 7 of the original act as enacted in

1938, there was no statutory definition of what Congress meant by the phrase "the regular rate at which. he is employed." Section 7(a) provided, with exceptions not now relevant, that no employer should employ any of his employees who is engaged in commerce or in the production of goods for commerce, as defined, for a workweek longer than 40 hours, "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." It became firmly established that an employer might be guilty of an overtime violation under § 7, even though the total compensation which an employee of his might have received for a workweek in excess of 40 hours was equal to or in excess of the minimum hourly rate prescribed in § 6, for 40 hours of work, plus time and one-half such minimum hourly rate for every hour in the workweek in excess of 40 hours. Overnight Motor Transp. Co., Inc., v. Missel, 1942, 316 U.S. 572, 577–578, 62 S.Ct. 1216, 86 L.Ed. 1682. Also, it became established that the contract of employment need not express the agreed compensation in terms of an hourly rate, but might, for example, fix the compensation in terms of a lump sum weekly salary, regardless of the number of hours worked in any particular workweek. In such a case "the regular rate" for a particular week had to be determined by translating the agreed weekly salary into an hourly rate, through the device of dividing the amount of salary paid for the week by the number of hours actually worked in that week; and if the employee worked more than 40 hours in any particular week he was entitled to receive extra compensation for such excess hours, in addition to his weekly salary, in an amount at least equal to one-half the regular hourly rate so determined. See Overnight Motor Transp. Co., Inc., v. Missel, supra, 316 U.S. at page 580, 62 S.Ct. at page 1221. As the Supreme Court explained in the Missel case, instead of forbidding outright any employment in excess of 40 hours a week, as Congress might constitutionally have done, Congress chose, in general, to discourage such overtime work by making it cost something extra to the employer to work his employees in excess of 40 hours a week. "By this requirement, although overtime was not flatly prohibited, financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act. In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work. Reduction of hours was a part of the plan from the beginning." 316 U.S. at pages 577–578, 62 S.Ct. at page 1220.

In the Belo case, the Supreme Court had before it an employer who, prior to the effective date of the Fair Labor Standards Act, had been paying weekly salaries by way of compensation to employees the length of whose workweeks fluctuated widely from week to week. If the compensation basis had been shifted merely to an hourly rate, the employees, due to the irregular hours of employment, never could count on an assured compensation per week. For the dual purpose of conforming its wage arrangements to the requirements of the Act, and at the same time to assure its employees that their previous weekly salaries would not be reduced, the employer entered into bona fide individual contracts of employment which fixed the employee's basic or regular rate of pay at an hourly rate substantially in excess of the minimum prescribed in § 6, and provided that the employee would receive not less than one and one-half times this basic hourly rate for each hour worked in excess of the maximum workweek stipulated in § 7, with a guaranty to the employee that, regardless of the fluctuations in the length of the workweeks, he would always receive at least an amount equivalent to his prior week-

ly salary. Under the contracts, because of the fixed relationship between the stipulated hourly rate and the weekly guaranty, each employee had to work at least 54½ hours a week before his guaranty was exceeded, in which event he would be compensated for the hours worked in excess of 54½ at a rate equal to time and one-half the basic hourly rate; but whether he worked 30 hours or 54½ hours in a particular workweek, the employee was still assured of receiving his guaranteed weekly salary. As indicating that the hourly rate stipulated in the contract was not an artificial or fictitious contrivance, the Court emphasized that whenever an employee received a raise in pay the employer would make a conjoint adjustment both of the employee's basic hourly rate and of his guaranteed weekly salary.

The Supreme Court upheld the foregoing wage arrangement in the Belo case. The basic hourly rate specified in the contract became the lawful "regular rate," and this was still true despite the additional provision of a weekly guaranty. There was such a consistent and reasonable relationship between the stated hourly rate and the guaranteed weekly sum that, in any week in which the employee worked a number of hours in excess of the maximum fixed in § 7 [44 hours originally, now 40] but not enough to exceed the weekly guaranty, the parties might fairly be deemed to have contemplated that the guaranteed weekly sum embraced two factors: (1) A sum equal to 44 hours of employment [now it would be 40] at the basic hourly rate, and (2) the balance, regarded as the equivalent of not less than one and one-half times the basic hourly rate for each hour worked in excess of the statutory maximum. In any week in which the employee worked in excess of the statutory maximum, but less than 54½ hours, it was true that this assumed overtime component of the guaranteed weekly wage was a sum in excess of that arrived at by applying the formula of time and one-half the stipulated basic hourly rate. However, the Court pointed out:

"But the Act does not prohibit paying more; it requires only that the overtime rate be 'not less than' 150% of the basic rate." 316 U.S. at page 632, 62 S.Ct. at page 1227.

From the start, the Administrator of the Wage and Hour Division has disliked the Belo decision and has sought to whittle it down because, to the extent that it was applicable, an employer might make a wage bargain with his employees which would permit him to work them for hours in excess of the maximum specified in § 7 without having to pay a premium therefor, provided the weekly guaranty is not exceeded. While this is true enough, the answer of the Supreme Court in the Belo case was as follows, 316 U.S. at page 635, 62 S.Ct. at page 1229:

"When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours. Where the question is as close as this one, it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance. Congress has said nothing to prevent this desirable objective. This Court should not."

Accordingly, the Supreme Court declined to overrule the Belo case in Walling v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 67 S.Ct. 1056, 91

L.Ed. 1312, but on the contrary applied it to approve a wage arrangement whereunder the employees had to work more than 84 hours a week in order to exceed their weekly guaranties and thus earn additional compensation at one and one-half times the stipulated regular hourly rate.

When in 1949 the Congress set itself the task of making an extensive revision of the Fair Labor Standards Act, it determined to write into the law a provision giving specific approval to wage arrangements of the Belo type. Whereas the Administrator has regarded it as a basic and overriding policy of the original act to encourage employers to "spread the work" by the device of exacting from them a wage premium for hours worked in excess of the maximum stipulated in § 7, it may be that in the economic conditions prevailing in 1949 the Congress did not deem this policy to be so strong and controlling as it might have been in 1938 when the Act was originally passed. At any rate, it is clear from what the Congress did in 1949 that it thought that there were important counter-considerations of policy applicable in the cases of employers with wide and unpredictable fluctuations of the workweek. The policy decision was one for the Congress to make, whatever the Administrator, or the courts, might think as to its wisdom. Section 7(e), which the Congress added in 1949, reads as follows, 63 Stat. 914:

" 'No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 6(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.' "

Notwithstanding this new § 7(e), appellant urges that the case at bar is determined by the ruling of this court in McComb v. Roig, 1 Cir., 1950, 181 F.2d 726. We think this is clearly not so, since the overtime compensation which we held to be due in the Roig case was for workweeks *prior* to the effective date of the 1949 amendments, and we pointed out, 181 F.2d at page 727 that "Congress has finally, in the 1949 amendments, 63 Stat. 910, supplied more detailed statutory guides in the Belo and related situations, but these amendments do not control the disposition of the case at bar." In the Roig case we did not consider the provisions of § 7(e) at all.

Though the present case involves overtime compensation alleged to be due for workweeks as to which the new § 7(e) is undoubtedly applicable, if we understand appellant's contention we are to decide this case just as though § 7(e) had not been enacted, which would throw us back into the morass of cases in which the courts, groping in the dark, so to speak, without specific statutory guidance, were struggling with the implications of the Belo doctrine, as enunciated originally in Walling v. A. H. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. We think no such burden now rests upon us. Though the legislative history makes clear that the Congress had the Belo decision in mind when it enacted the self-sufficient substantive provisions of new § 7(e), we cannot infer that the Congress meant § 7(e) to be merely clarifying language approving the principle of the Belo case as elaborated and applied in subsequent court decisions. Upon the contrary, the concluding language in § 7(e) requires that the contract of employment must provide "a weekly guaranty of pay for not more than sixty hours based on the rates so specified"—which would rule out such a wage agreement as was present in Wall-

ing v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312, though the Supreme Court had regarded that wage agreement as being lawful and valid within the principle of the Belo case. On the other hand, it is clear that the Congress has disapproved such decisions as Bay Ridge Operating Co., Inc., v. Aaron, 1948, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502, for it promptly amended the Act to overturn the ruling in that case, notwithstanding the fact that a majority of the Court had held that the wage agreement there involved was not within the Belo principle and did not save the employer from making additional overtime payments for work in excess of the statutory maximum. See 63 Stat. 446; Sen. Rep. No. 402, 81st Cong., 1st Sess. The substance of this amendment now appears in §§ 7(d) (5), (6) and (7), and § 7(g) of the Act. See 63 Stat. 914, 915.

■ Therefore we think that the new § 7(e) enables the courts to make a fresh start, and in any case of wage agreements which fall within the unambiguous language of that subsection, the employer must be deemed not to have violated the overtime provisions of § 7(a), whatever the courts might have held without the statutory guidance of § 7 (e).[1]

With the foregoing preliminary observations, we now come to the facts of the present case. They are contained in an agreed stipulation and are not in dispute.

Appellee is a Minnesota corporation engaged in the manufacture, sale, distribution, installation and repair of printing presses and related equipment. Though it has its headquarters in St. Paul, Minn., it operates eleven branch offices in various cities and states throughout the country, at which branch offices it employs one or more persons known as "erectors." The number of erectors employed at any one time was subject to variation, but during the period from August 1, 1950, to September 6, 1953, appellee employed a total of seventeen erectors at its various branch offices, including the one in Boston, Massachusetts.

Each of these erectors was employed under a standard form of individual contract which specified that the employee's "basic rate of pay" would be a certain amount per hour (in all cases in excess of the minimum stated in § 6) for the first 40 hours of work each week, and provided further that for time employed over 40 hours during each week the employee would receive for such excess

---

1. Though we do not in the present case have to decide the point, it may be that wage agreements in terms like those we dealt with in McComb v. Roig, 1 Cir., 1950, 181 F.2d 726, would not fall within the saving provisions of § 7(e). The argument would be that when § 7(e) requires that a bona fide contract of employment must specify, among other things, "a regular rate of pay of not less than the minimum hourly rate provided in section 6(a)", it is not enough that the contract of employment may name an hourly rate and label it the "regular rate of pay", where it is obvious that such hourly rate is merely an arbitrary and fictitious figure not really meant by the parties to be the basis upon which the agreed compensation is to be calculated. As we pointed out in the Roig case, all the employees there concerned, regardless of the wide differences in the kind of jobs that they severally performed, were listed as working at the same contract hourly rate of 47 cents, though their weekly guaranties varied from $24.44 to $40.00. Since there was an absence of any logically consistent or reasonable relation, either on an individual or on a group basis, between the weekly guaranties and the specified hourly rates, we concluded that the hourly rates of 47 cents mentioned in the contracts were artificial contrivances which did not really set the "regular rate" at which the workers were employed; and that therefore the plan failed "even though it is true that four of the eight workers involved, at times, though not often, took home more than their weekly guaranties." 181 F.2d at page 730. We also pointed out that it is a clear indication that the stated hourly rate is wholly artificial if the employees from time to time receive wage increases in the form of increases in the weekly guaranties while the hourly rate remains unchanged.

hours "not less than one and one-half times such basic rate above mentioned," with a guaranty on the part of the employer that the employee would receive at least a stated minimum sum each week. This sum was designed to be the equivalent of what the employee would receive for 48 hours of work at the stated basic hourly rate for the first 40 hours and one and one-half times such basic rate for the additional eight hours. Thus since the guaranty assured to each employee weekly earnings which would be equivalent to what he would earn at the basic hourly rate, plus statutory overtime, for 48 hours of employment each week, the contracts clearly complied with the concluding requirement of the new § 7(e) to the effect that the weekly guaranty must be "for not more than sixty hours based on the rates so specified."

■ The hours worked by the said erectors during a workweek varied widely from week to week and from erector to erector due largely to the irregularity and unpredictability of demand for their services. This variation ranged from a minimum of eight hours a week in one case to a maximum of 75 hours a week in another. More often than not these erectors worked less than 40 hours a week, but in over 20 per cent of the total number of workweeks in which these seventeen erectors were employed the hours worked were in excess of 40, and in about 3 per cent of the total workweeks the hours worked were in excess of the 48 upon which the guaranty was based; and of course in these cases where the erector worked more than 48 hours and thus exceeded his guaranty, he received additional compensation for the hours in excess of 48 on the basis of one and one-half times his stated hourly rate. The individual contracts of employment in the present case thus indubitably met another requirement of § 7(e) of the Act in that the duties of the employees involved necessitated "irregular hours of work".

As bearing on the genuineness of the basic hourly rate stated in the contracts, it is a fact that whenever one of the erectors received an increase in pay a new contract was issued to the employee and signed by him to signify his acceptance, with appropriate changes therein both in the basic hourly rate and in the weekly guaranty so as to maintain the consistent relationship between the hourly rate and the weekly guaranty, the amount of the guaranty being in all cases designed to assure to the employee weekly earnings equivalent to what he would receive for 48 hours of employment at the stated basic hourly rate for the first 40 hours and the statutory overtime thereon for the additional eight hours.

We are in entire agreement with the following paragraphs from the opinion of the district court:

"In this case the wage plan employed by the defendant clearly complies with the provisions of Section 7(e) in the following respects: the employment contracts specify as a regular rate of pay an hourly sum which in each case is at or above the minimum prescribed by the Act; compensation at not less than one and one-half times the hourly rate is provided for all hours worked in excess of forty in any workweek; and a weekly guarantee of pay is also provided for at not more than sixty hours based on the rate specified. In this case the guarantee is for forty-eight hours of work. "There does not seem to be any dispute either as to the fact that the employees are employed pursuant to bona fide individual contracts. In any case, I find this to be the fact. I also find from the evidence in the case that the duties of the erectors necessitate irregular hours of work. This fact is apparent from but a cursory examination of the payroll records of the employees. Thus the wage contracts in this case comply in all respects with the express provisions of Section 7(e) supra, and for this reason should be sustained by this Court." [129 F.Supp. 677.]

■ It would, in our opinion, be unwarranted judicial legislation on our part to read into § 7(e) another requirement which the Congress chose not to put there, namely, that under individual contracts which in all other respects comply with § 7(e) the employees concerned must, in a certain percentage of workweeks, or in a "substantial" or a "significant" number of workweeks, actually have worked enough hours to exceed their respective guaranties so as to entitle them to extra compensation for such excess hours on the basis of time and one-half the basic hourly rate. This contention by the government was rightly rejected in Tobin v. Little Rock Packing Co., 8 Cir., 1953, 202 F.2d 234, certiorari denied 1953, 346 U.S. 832, 74 S.Ct. 26, 98 L.Ed. 355. To the same effect see Mitchell v. Adams, D.C.M.D. Ga.1955, 129 F.Supp. 377.

Similarly, we think we would not be warranted in reading into § 7(e) an additional requirement that the weekly guaranty must be based upon an assumed *average* number of hours the employee might be expected to work per week during the performance of a contract of employment of indefinite duration. The only requirement in this respect which the Congress chose to insert in § 7(e) was that the weekly guaranty must not be for "more than sixty hours based on the rates so specified."

So far as the record discloses, the employees concerned have not complained, but are satisfied with the wage bargains they respectively made, under which they are assured of a stable weekly pay notwithstanding that the nature of their employment is such as to make inevitable a wide and unpredictable fluctuation in the number of hours actually worked per week. In this aspect of the case, the observations of the Supreme Court in the Belo case, 316 U.S. at page 635, 62 S.Ct. at page 1229, which we have quoted earlier in this opinion, are very much in point and have an obvious persuasive force.

The judgment of the District Court is affirmed.