James P. MITCHELL, Secretary of Labor, Plaintiff-Appellant,

v.

The HARTFORD STEAM BOILER IN-SPECTION AND INSURANCE COM-PANY, Defendant-Appellee.

No. 168, Docket 23739.

United States Court of Appeals Second Circuit.

Argued Jan. 18, 1956.

Decided July 20, 1956.

Stuart Rothman, Sol., Bessie Margolin, Asst. Sol., Harry A. Tuell, Attorney, U. S. Dept. of Labor, Washington, D. C., Thomas L. Thistle, Regional Attorney, Boston, Mass., for plaintiff-appellant.

Lucius F. Robinson, Jr., John M. Donahue, Hartford, Conn. (Robinson, Robinson & Cole, Hartford, Conn., of counsel), for defendant-appellee.

Cyril Coleman, C. Duane Blinn, Hartford, Conn., for Aetna Life Ins. Co., amici curiæ.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This action, involving the validity under § 7(e) of the Fair Labor Standards Act, 29 U.S.C.A. § 207(e), of guaranteed wage contracts of the so-called Belo type, was brought by the Secretary of Labor to enjoin the Hartford Steam Boiler Inspection and Insurance Co. (hereafter "Hartford") from violating the overtime provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The United States District Court for the District of Connecticut dismissed the Secretary's complaint on the ground that defendant's guaranteed wage contracts were not in violation of § 7(e) of the Act, and the Secretary appeals.

Hartford is a Connecticut corporation engaged in the casualty insurance business, primarily the insuring of steam boilers, pressure vessels, and machinery. It employs approximately 600 inspectors, whose duty it is to determine the initial and continuing suitability of boilers, machinery, etc. for insurance. The duties of these inspectors necessitate irregular hours of work, typically fluctuating between 35 and 50 hours per week. Since 1950 Hartford has paid its inspectors under individual guaranteed wage contracts providing for an hourly rate of pay for the first 40 hours in each work week, time and one-half for each hour over 40, and a weekly guarantee

of an amount equivalent to the amount payable if 60 hours were actually worked. Each inspector was notified by a form letter accompanying his contract that it was not contemplated that he would have to work more than 60 hours in any work week, and each employee was required to get company authorization before doing so. In actual practice, only one quarter of 1% of the work weeks over a two-year period exceeded 60 hours. The District Court found that the hours worked "were expected to fluctuate but to be kept below 60 hours in all but the most exceptional cases."

The sole issue raised by this appeal is whether a guaranteed wage contract complies with § 7(e) of the Act, 29 U. S.C.A. § 207(e), even though the employees subject to that contract do not work a number of hours in excess of the guarantee period specified in the contract in a "substantial proportion" or "significant number" of work weeks.[1] The Secretary, relying primarily on the judicial interpretation of "regular rate" prior to 1949, when the Act was extensively revised and § 7(e) added, contends that the phrase "regular rate of pay" in § 7(e) impliedly incorporates the "substantial proportion" requirement; Hartford disagrees. To resolve the issue, we must refer to the words of the statute, its purpose and history, and the cases construing it.

The basic overtime pay requirement of the Act is contained in § 7(a).[2] It expresses the employer's obligation in terms of a duty to pay for overtime not less than one and one-half times "the regular rate at which he is employed." The term "regular rate" was not defined in the original Act, nor was any reference made to guaranteed wage contracts. This absence of precise statutory criteria necessarily left to the courts the problem of giving content to the statutory language and of defining the limits within which employers and employees might establish basic and overtime rates by contract. The Department of Labor, which has consistently opposed guaranteed wage plans, initially took the position that any wage plan which did not reflect the actual hours worked in each workweek was invalid. However, this position was rejected by the Supreme Court in Walling v. A. H. Belo Corporation, 1942, 316 U. S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and guaranteed wage contracts of the type now sanctioned by § 7(e) were held valid. Walling v. A. H. Belo Corporation, supra; Walling v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 67 S. Ct. 1056, 91 L.Ed. 1312. Other Supreme Court cases, while accepting Belo as an exception to the usual rule, tended to narrow its application. Walling v. Helmerich & Payne, 1944, 323 U. S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., 1945, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Walling v. Harnischfeger Corporation, 1945, 325 U.S. 427, 65 S.Ct. 1250, 89 L.Ed. 1711; 149 Madison Ave. Corporation v. Asselta, 1947, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432; Bay Ridge Operating Co. v. Aaron, 1948, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502. The Courts of Appeals, con-

1. The Secretary does not question the bona fides of the contract, the irregularity of the hours worked by the inspectors, and the sufficiency or accuracy of the records kept by Hartford. Hartford, however, contends that its inspectors are exempt from the coverage of the Act as administrative employees under § 13(a), 29 U.S. C.A. § 213(a). The Secretary replies that that question cannot be raised here because no cross-appeal was taken. Because of the view we take as to the validity of Hartford's guaranteed wage contracts, it is unnecessary for us to decide either the merits of this question or whether the issue can properly be raised by Hartford without a cross-appeal.

2. "Sec. 7(a). Except as otherwise provided in this section, no employer shall employ any of his employees * * * for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207 (a).

fronted by an exception of uncertain scope, evolved different criteria with the result that each case turned "pretty much on its particular facts." Mc-Comb v. Roig, 1 Cir., 1950, 181 F.2d 726, 727; cf. McComb v. Pacific & Atlantic Shippers Ass'n, 7 Cir., 1949, 175 F.2d 411; McComb v. Utica Knitting Co., 2 Cir., 1947, 164 F.2d 670.

It was against this background of uncertainty that Congress, as part of an extensive revision of the Act in 1949, enacted the present § 7(e).[3] Section 7 (e) represents a codification of the previous case law only to the extent that it constitutes an express recognition of the validity of guaranteed wage contracts, limited in their use to employees who must work irregular hours and subject to the requirement that the contract be a "bona fide individual contract" or "an agreement made as a result of collective bargaining." The only express limitation on the contract guarantee of pay is that it be "for not more than sixty hours." There is no requirement expressed in the section that there be any sort of relation between that guarantee and the number of hours actually worked.

The Secretary, however, contends that the use of the term "regular rate" in § 7(e) was meant to incorporate the pre-1949 judicial interpretation of that term, and that these pre-1949 cases establish that specified hourly rates are not "regular rates" unless they have actually received significant or substantial use in determining amounts to be paid to employees. Since the specified hourly rates are only operative when the employees work hours in excess of those guaranteed in the contract, this is an assertion that a guaranteed wage plan can only be valid if the employees who are subject to the contract work a number of hours in excess of the guarantee period in a "substantial proportion" or "significant number" of workweeks. For the reasons stated below, we think the Secretary's contention that Congress intended to impose a "significant number of workweeks" test on guaranteed wage plans, which in all other respects comply with § 7(e), is an incorrect interpretation of the Act.

*First*, the pre-1949 decisions indicate that the law as to guaranteed wage contracts under § 7(e) was unclear and unsettled. The two Supreme Court cases upholding the validity of guaranteed wage contracts, Walling v. A. H. Belo Corporation, supra, and Walling v. Halliburton Co., supra, give no indication that the Supreme Court had adopted the "significant number of workweeks" tests as a criterion of validity. In Belo the Court adverted to the fact that the employees, on occasion, exceeded the guarantee period and that in such weeks they received more than the guaranteed wage, but no weight was accorded that fact, and no attention was paid to the number of workweeks in which the guarantee was exceeded. In Halliburton [331 U.S. 17, 67 S.Ct. 1058] the Court noted that the guarantee was exceeded "in about 20 per cent of the workweeks," but there is nothing to warrant a conclusion that the Court had established the requirement that there be a relationship between the number of hours for which pay is guaranteed and the number of hours customarily worked.

The decisions of lower federal courts illustrate the unsettled state of the law. Two Courts of Appeals adopted the "sig-

---

3. "Sec. 7(e). No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 6(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified." 29 U.S.C.A. § 207(e).

nificant number of workweeks" test advocated by the Department of Labor. McComb v. Sterling Ice & Cold Storage Co., 10 Cir., 1947, 165 F.2d 265, McComb v. Roig, 1 Cir., 1950, 181 F.2d 726; a third Court of Appeals upheld a guaranteed wage plan even though the employees involved never exceeded the hours guaranteed, McComb v. Pacific & Atlantic Shippers Ass'n, 7 Cir., 1949, 175 F.2d 411; and this Court upheld the validity of a guaranteed wage plan without reference to the number of workweeks in which the hours worked had exceeded the guarantee, McComb v. Utica Knitting Co., 2 Cir., 1947, 164 F. 2d 670.

*Second,* the purpose and history of the enactment of § 7(e) in 1949 indicates congressional unwillingness to adopt the test advocated by the Secretary. When the Fair Labor Standards Act was originally enacted in 1938, the nation was in a period "of widespread unemployment and small profits." Overnight Motor Transp. Co. v. Missel, 1942, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682. The major purposes of the Act were to eliminate long hours and to spread work by increasing the cost of overtime to employers. With the improvement of the national economy, the Supreme Court upheld the validity of a guaranteed wage contract, indicating that it would not give the Act a rigid application which would make impossible the attainment by employers and employees of other objectives fully as meritorious as the spreading of employment, stating: "Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance" and also: " 'When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset

it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours.' " Walling v. A. H. Belo Corporation, supra, 316 U.S. at page 635, 62 S.Ct. at page 1229. The Department of Labor, strongly opposing this interpretation of the Act, attempted to obtain judicial[4] and then legislative reversal of the Belo doctrine. Many employer and employee groups, however, favored Belo and advocated legislative approval and expansion. During 1949, when revision of the Fair Labor Standards Act was being considered, these conflicting views were placed before Congress in the form of bills which would have: (1) expressly outlawed guaranteed wage contracts; (2) permitted their use, but subject to specific limitations including a "significant number of workweeks" test; or (3) permitted their use, without limitation as to the relation between hours worked and hours guaranteed. Congressional adoption of the third alternative in preference to the first or second alternatives which were advocated by the Department of Labor suggests that Congress favored Belo contracts and that it did not intend to limit their use in the manner suggested by the Secretary.

Other factors reinforce this conclusion. The inclusion of certain express limitations on the use of guaranteed wage contracts in § 7(e) indicates that other limitations, not expressly stated, were not intended. And the precise statement in § 7(f) (3) of a requirement similar to that contended for by the Secretary with respect to § 7(e) supports a similar inference. Finally, the confusing state of the case law makes it unlikely that Congress intended to incorporate a "significant number of workweeks" requirement by the indirect method of including in

---

**4.** In Walling v. Halliburton Oil Well Cementing Co., 1947, 331 U.S. 17, 25, 67 S. Ct. 1056, 91 L.Ed. 1312, the Administrator of the Wage and Hour Division, De- partment of Labor, contended that Belo had been wrongly decided. This contention was rejected by the Supreme Court.

§ 7(e) the phrase "regular rate." Congress could hardly have found a *less* precise way to express such an intention.

*Third,* the judicial interpretation of § 7(e) is contrary to the position advocated by the Secretary. In Tobin v. Little Rock Packing Co., 8 Cir., 1953, 202 F.2d 234, a guaranteed wage plan was upheld even though the employees *never* exceeded the guaranteed number of hours.[5] And recently the First Circuit has rejected the Secretary's argument in a persuasive and comprehensive opinion by Chief Judge Magruder. Mitchell v. Brandtjen & Kluge, Inc., 1 Cir., 1955, 228 F.2d 291, affirming D.C.D.Mass.1955, 129 F.Supp. 675. We entirely agree with the reasoning and conclusion contained therein.

Judgment affirmed.

---

5. To the same effect is Mitchell v. Adams, D.C.M.D.Ga.1955, 129 F.Supp. 377. The Secretary relies on the following cases as demonstrating judicial recognition under § 7(e) of the "significant number of workweeks" test: Sikes v. Williams Lumber Co., D.C.E.D.La.1954, 123 F.Supp. 853; Tobin v. Aronow, D.C.D.Mont.1951, 96 F.Supp. 279; Tobin v. Morristown Poultry Co., D.C.E.D.Tenn.1952, 21 CCH Labor Cases ¶66,798; Tobin v. Keystone Mfg. Co., D.C.W.D.Ark.1952, 143 F.Supp. 231; Tobin v. Wenatchee Air Service, Inc., E.D.Wash.1952, 21 CCH Labor Cases ¶67,-019; Tobin v. Ewbank Motor Freight Lines, Inc., D.C.W.D.Tenn.1952, 23 CCH Labor Cases ¶67,411. We think these cases are either erroneous or distinguishable on their facts.