James P. **MITCHELL**, Secretary of Labor, Plaintiff-Appellee,

v.

Meyer **FEINBERG**, Defendant-Appellant.

No. 88, Docket 23464.

United States Court of Appeals Second Circuit.

Argued Jan. 18, 1956.

Decided July 31, 1956.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

PER CURIAM.

We think our decision in Mitchell v. Hartford Steam Boiler Inspection & Ins. Co., 2 Cir., 235 F.2d 942, requires a modification of the judgment below. The facts are stated in Judge Galston's opinion below, 123 F.Supp. 899.

■ It is true that under the Feinberg contract, an employee may receive greater compensation, in terms of hourly rates, for weeks in which he works four days (or less) than in weeks in which he works five days. This incident, however, is not violative of the Act and constitutes, in our judgment, insufficient ground to differentiate the case from Hartford. We hold that there was error in the conclusions that the contract did not meet the requirements of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and that the defendant had failed to pay required overtime for work in excess of 40 hours.

■ The violation of the record-keeping provisions of the Act, 29 U.S.C.A. §§ 211(c) and 215(a) (5), we think was fully proved and properly enjoined.

. Modified.

WATERMAN, Circuit Judge (concurring in part and dissenting in part).

- I concur in the per curiam opinion filed by my colleagues insofar as they affirm the decision below that the record-keeping provisions were violated. I dissent therefrom insofar as they hold that there was no violation of the overtime provisions, for I believe this case is so different on its facts from Mitchell v. Hartford Steam Boiler Inspection & Ins. Co. that the facts here require affirmance of the decision below. Although many of the contentions of the Secretary of Labor are disposed of adversely to him by our Hartford decision, it is my thought that the provision in appellant Feinberg's collective bargaining agreement by which appellant pays overtime compensation for non-overtime work clearly demonstrates

, Benjamin Cooper, New York City, for defendant-appellant.

' . Stuart Rothman, Solicitor, Bessie Margolin, Asst. Sol., Harry A. Tuell, Attorney, U. S. Dept. of Labor, Washington, D. C., John A. Hughes, Regional Attorney, New York City, for plaintiff-appellee. '

that there was no compliance—and no intent to comply—with the requirement that a "regular rate" of pay be paid for a workweek of forty hours or less; and therefore the agreement if entered into by an employer subject to the Act is violative of the Act, [1] and performance of it by the appellant, so subject, causes him to violate. See 149 Madison Ave. Corp. v. Asselta, 1947, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432.

I read § 7(e) of the Act, 29 U.S.C.A. § 207(e) which became law in 1949 subsequent to Asselta, and which was discussed by us in Mitchell v. Hartford Steam Boiler Inspection & Ins. Co., supra, to state that employers who employ employees who work irregular hours during a workweek *in excess* of forty hours may provide a weekly guaranty of pay within the limitations therein contained provided the guaranty agreement specifies "a regular rate of pay" and "compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek".[2]

I believe the facts in this case do not permit Feinberg to find shelter under § 7(e).

Feinberg is the owner and operator of a small trucking business, and all of his employees, approximately 20 in number, are drivers or helpers who pick up and deliver cut goods and completed garments among manufacturers and contractors in the garment industry. These employees are paid pursuant to a guaranteed wage plan embodied in a collective bargaining agreement entered into by a local of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, of which the employees are members, and an employers' association, of which Feinberg is a member. This collective bargaining agreement specifies a regular basic hourly rate for the first 40 hours in each week, and guarantees payment each week, subject to conditions described below, for at least 8 hours of overtime at a rate equal to one and one-half times the regular hourly rate.[3] The

1. Feinberg stipulated that his employees were within the coverage of the Fair Labor Standards Act. No question has been raised concerning the possible application to this case of the exception contained in § 13(b)(1) of the Act, 29 U.S.C.A. § 213(b)(1), which provides that "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act," 49 U.S.C.A. § 304, shall not be subject to the overtime provisions of the Fair Labor Standards Act. See Morris v. McComb, 1947, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44.

2. The pertinent statutory provisions are 7(a) and 7(e) of the Fair Labor Standards Act as amended. They read as follows:

Sec. 7(a). "Except as otherwise provided in this section, no employer shall employ any of his employees * * * for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a).

Sec. 7(e). "No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 6(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified." 29 U.S.C.A. § 207(e).

3. For instance, the schedule of wages provides:

| Chauffeurs' guaranteed wage forty-eight hour week | Chauffeurs' guaranteed wage and hourly rate— forty-eight hour week |
|---|---|
| $91.00 | $1.75 |
| 92.00 | 1.77 |
| 93.00 | 1.79 |

guaranty is expressly qualified by the following provision:

"No wages shall accrue or be paid to an employee during those weeks in which he is not required to report for work, and wages as provided for in the attached schedule, shall be reduced in proportion to days absent during those weeks where the employee fails to report for any reason other than lack of work, provided that said employee had, in fact, commenced work during that week, or had been called upon to render services during any day of the workweek, which workweek shall commence on Monday."

The agreement also provides that

"Temporary or part-time workers shall not be covered under this subdivision; the practice and the provisions in force shall continue."

The district court below found that prior to August, 1953, Feinberg's employees worked variable hours from week to week, but never as many as 48. Up to that time the employees kept their own time cards, recording the actual hours worked. Then, beginning in August, 1953, Feinberg personally kept the time cards, uniformly recording 48 hours for each employee each week, irrespective of the actual hours worked. The court concluded that Feinberg's employees never worked in excess of 48 hours a week and that his records did not accurately indicate the actual hours worked subsequent to August, 1953.

The district court, in holding that this wage agreement did not qualify under § 7(e), 29 U.S.C.A. § 207(e), for exception from the basic overtime provision of the Act, § 7(a), 29 U.S.C.A. § 207(a), relied on the following facts: (1) the hours worked by the employees never ex-

ceeded the 48 hour guaranty period; (2) employees who testified did not understand the method by which they were paid; (3) Feinberg's records did not accurately reflect the number of hours his employees actually worked; and (4) where an employee missed a day for personal reasons, his pay for the week was decreased by one-fifth of the guaranteed wages for a forty-eight hour week. Insofar as the trial judge may have adopted the so-called "significant number of workweeks" test advocated by the Secretary to reach his result, he applied an erroneous criterion. Mitchell v. Hartford Steam Boiler Inspection & Ins. Co., supra. See also Mitchell v. Brandtjen & Kluge, Inc., 1 Cir., 1955, 228 F.2d 291. However, the opinion of the district judge, 123 F.Supp. 899, indicates that he was not relying on such a narrow proposition, but on the belief that the cumulative impact of all of the above factors demonstrated that the contractually specified hourly rates were wholly fictitious, had no significance in actuality, and were therefore not "regular rates" within the meaning of § 7(a) and (e).[4]

I think that most of the factors relied on by the district judge are of minor significance. The validity of a guaranteed wage plan does not depend upon the fact that the employees have or have not worked hours in excess of those guaranteed in the contract or agreement, Mitchell v. Hartford Steam Boiler Inspection & Ins. Co., supra. Similarly, the inadequacy of the records may well constitute a violation of the record-keeping provisions of the Act, 29 U.S.C.A. §§ 211(c) and 215(a) (5), but that alone should not invalidate a proper guaranteed wage plan when other evidence clearly shows that the employees' duties necessitate irregular hours and that the employees have never exceeded the hours for which the

4. A footnote in Mitchell v. Brandtjen & Kluge, Inc., 1 Cir., 1955, 228 F.2d 291, 296, note 1, suggests the same position: "The argument would be that when § 7(e) requires that a bona fide contract of employment must specify, among other things, 'a regular rate of pay of not less than the minimum hourly rate provided in section 6(a)', it is not enough that the contract of employment may name an hourly rate and label it the 'regular rate of pay', where it is obvious that such hourly rate is merely an arbitrary and fictitious figure not really meant by the parties to be the basis upon which the agreed compensation is to be calculated."

employer has guaranteed to pay. Also the fact that several employees failed to completely understand the computation by which they are paid does not make the established practice "unreal" or "fictitious." If the employees were working under individual contracts, their failure to fully understand the terms of employment might raise serious doubts concerning the bona fides of the contract, but they were working here under a collective bargaining agreement negotiated with the International Brotherhood of Teamsters, Chauffeurs, and Helpers, one of the most powerful unions in the country. Despite this, I think that this particular collective bargaining agreement violates the provisions of the Act by requiring that the employer reduce the weekly guaranteed wage "in proportion to days absent during those weeks where the employee fails to report for any reason other than lack of work * * * ". Under this provision of the collective bargaining agreement, Feinberg decreased the pay of employees who missed days of work for personal reasons by one-fifth of the "guaranteed" weekly wage for each day missed. So in such workweeks, the employer was neither paying the guaranteed wage provided for in the agreement nor determining compensation for work hours not in excess of 40 hours by the application of the hourly "regular rate" specified in the agreement. He was crediting employees with daily overtime in such workweeks. I contend that the Act requires the employer, if he is subject to its provisions, to pay the guaranteed sum in compliance with § 7(e), or, if, for a justifiable reason, he does not do so, to pay his employees in accordance with the "regular rate" specified in the agreement as required by § 7(a) and reiterated in § 7(e). I reach this conclusion reluctantly because of the obvious benefits to employees of such a practice as the daily crediting of overtime. But the judicial interpretation of the Act prior to the 1949 amendment clearly proscribed such arrangements, 149 Madison Ave. Corp. v. Asselta, 1947, 331 U.S. 199, 204–206, 67 S.Ct. 1178, 91 L.Ed. 1432, and I am un-

able to find any congressional determination to overrule such interpretation by the enactment of § 7(e). True, a guaranteed wage contract escapes the actual application of the specified "regular rate" by applying that rate and the overtime rate to an assumed, rather than actual, number of weekly work hours. But the overtime rate is still applied whenever the hours actually worked exceed the guaranteed hours. Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 21, 67 S.Ct. 1056, 91 L.Ed. 1312. Conversely, when the hours of work are less than forty, *and,* because of the provisions of the particular contract or agreement, the employer is not obligated to pay and does not pay the full guaranty, I think he is required to determine the pay of his employees by application to the actual hours worked of the "regular rate" specified in the contract or agreement.

Therefore I think the district court properly enjoined Feinberg from violating both the overtime and the record-keeping provisions of the Act, and I would affirm the judgment below in all respects.